## THOMPSON *v.* PAUL C. THOMPSON & SONS, ET AL.

[No. 418, September Term, 1969.]

*Decided June 4, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*Samuel D. Hill,* with whom were *George W. White, Jr.,* and *Buckmaster, White, Mindel & Clarke* on the brief, for appellant.

*Glenn C. Parker,* with whom was *Theodore B. Cornblatt* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

Dana A. Thompson (Dana), now 19 years of age, was seriously injured on 8 April 1968 while working on a farm owned by his uncle, Paul C. Thompson (Uncle

Paul). Proceeding on the theory that his injury occurred during the course of his employment with Paul C. Thompson & Sons (the Partnership) a partnership of which Uncle Paul was a member, Dana filed a claim with the Workmen's Compensation Commission. From the Commission's award of compensation for temporary total disability, the Partnership and Nationwide Mutual Insurance Company, (the Insurer) appealed. After trial before the Circuit Court for Howard County (Mayfield, J.) without a jury judgment was entered in favor of the Partnership and the Insurer on their motions for directed verdicts. Dana has appealed to this Court.

The court below found that Dana was not an employee of the Partnership on the day of the accident, and we cannot disturb this conclusion of fact unless it was clearly erroneous, Rule 886 a.

The testimony upon which the court posited its finding need only be summarized. The Partnership, consisting of Uncle Paul and his two sons, was a carpentry and roofing contractor. In the summer vacations of 1966 and 1967, Dana had worked for the Partnership as a carpenter's helper, and had been paid by checks drawn on the Partnership's account. He had also worked for the Partnership on five days in January, February and March of 1968, and had been paid in the same fashion. The Partnership had reported this employment to the Insurer.

Dana's school was closed on Monday, 8 April 1968 because of the unrest which had followed the assassination of Dr. Martin Luther King. Uncle Paul's two adult sons, the other members of the Partnership, had been called to active duty with the National Guard in Baltimore. On Monday, Uncle Paul asked Dana to come down to the farm to move some bushes and do some clearing for a swimming pool which Uncle Paul was planning to build on his farm. Dana conceded that Uncle Paul was directing his work, and that the work was not of the type usually done by the Partnership. It was while Dana and Uncle Paul were cutting down trees with a chain saw that Dana was injured.

Ultimately Dana was paid for the work which he did on the day of the accident by Uncle Paul's personal check. Dana testified that he had always been paid in the past by checks of the Partnership except when he helped Uncle Paul's wife with her flower garden. He said that on those occasions he was paid in cash.

Dana makes much of the fact that on one occasion, he had been paid by the Partnership for baling hay and that on the day of the accident, Jackie Ross, who was regularly employed by the Partnership, was working with him and Uncle Paul. Nowhere does the record show that the hay-baling took place on Uncle Paul's farm. As regards Ross, in answer to a request for admission of facts, the Partnership responded, "By private arrangement between the partners, work which Ross did for Paul C. Thompson, Sr., individually and on his individually owned farm and rental property, was paid for out of the Partnership account."

It is well established that a decision of the Workmen's Compensation Commission is prima facie correct, and that the burden of proof is on the party attacking it, Maryland Code (1957, 1964 Repl. Vol.) Art. 101 § 56 (c). "This means nothing more than that, if the mind of the trier of facts is in equal balance on the evidence in the record, the finding of the Commission should be affirmed." *Morris v. Christopher,* 255 Md. 372, 380, 258 A. 2d 172 (1969); *Blake Constr. Co. v. Wells,* 245 Md. 282, 286, 225 A. 2d 857 (1967).

We have consistently held that the words "employer" and "employee" as they appear in our Workmen's Compensation Act, Art. 101 § 67, are the equivalent of and synonymous with the words "master" and "servant", and that therefore the rules for determining the existence of the relation of employer and employee under the Act are the same as the common law rules for ascertaining the relation of master and servant, *Anderson Nursing Homes, Inc. v. Walker,* 232 Md. 442, 444, 194 A. 2d 85 (1963) and cases there cited.

It is equally well settled that where the terms and man-

ner of employment are disputed, and different inferences may be drawn therefrom, the issue as to the relation that existed between the parties is a mixed question of law and fact to be determined by the trier of the facts under proper instructions. *Tavel v. Bechtel Corp.*, 242 Md. 299, 303, 219 A. 2d 43 (1966) ; *Clayburn v. Soueid, Inc.*, 239 Md. 331, 337, 211 A. 2d 728 (1965) ; *Hygeia Ice & Coal Co. v. Schaeffer*, 152 Md. 231, 236-37, 136 A. 548 (1927).

Of the several criteria to be applied in determining the existence of an employer-employee relationship, the right to control and direct the worker in the performance and manner of doing the work is the most decisive test, *Anderson Nursing Homes v. Walker, supra,* 232 Md. at 444; *Marine v. Service Trucking Co.*, 225 Md. 315, 319, 170 A. 2d 188 (1961), although others such as the selection and engagement of the worker, the payment of wages, the power of dismissal, whether the work is a part of the regular business of the employer, and whether the parties believe they were creating the relationship of master and servant have been referred to in the cases, *L. & S. Constr. Co. v. State Accident Fund,* 221 Md. 51, 57, 155 A. 2d 653 (1959).

Dana refers us to 3 Schneider, *Workmen's Compensation* § 782 (3d Ed. 1943) at 14-22 and to 1 A Larson, *Workmen's Compensation* § 4810 (1967) at 805, *et seq,* and cases there cited in an effort to bring himself within the ambit of the "lent employee" situation. Here again there are certain criteria to be applied, among them the consent of the employee, which may be expressed or implied; the right to control and direct the worker; and the responsibility for the payment of wages, which must be considered but is not necessarily determinative. When the facts are in dispute, whether an employer-employee relationship existed is a jury question, *L. & S. Constr. Co. v. State Accident Fund, supra,* 221 Md. at 59; *Sun Cab Co. v. Powell,* 196 Md. 572, 77 A. 2d 783 (1951).

More closely analogous to the case at bar than the other cases relied on by Dana, which deal with orders given by a general employer or the absence of consent by

an employee, is *Springfield Lumber, Feed & Fuel Co. v. Industrial Comm'n*, 10 Wis. 2d 405, 102 N.W.2d 754 (1960). There, the same family owned two closely held corporations: one a lumber company; the other, a dairy. The claimant was the salaried vice president and a substantial stockholder of the dairy. He was also an unpaid director and the holder of one qualifying share of the lumber company. The claimant was asked by his brother, the manager of the lumber company, to come over to the lumber company to help in the moving of equipment, in the course of which the claimant was injured. A claim for compensation from the dairy company was rejected, the court holding that the claimant was not under the orders of his general employer, the dairy company, but had impliedly consented to become an employee of a special employer, the lumber company, when he undertook a task which solely benefited the lumber company.

It was certainly not error for the court below to find as a fact that Dana was not an employee of the Partnership on the day of the accident. Uncle Paul hired Dana, paid him, and directed his work. The work was not being done on the Partnership's property, did not benefit the Partnership, and was not the sort of work in which the Partnership engaged.

Having concluded that it was correctly determined that Dana was not an employee of the Partnership, he could not have been a casual employee.

> *Judgment affirmed, costs to be*
> *paid by appellant.*