WILLIAM J. BURNS INTERNATIONAL DETECTIVE AGENCY, INC. ET AL. *v.* ROBERT J. FERRIS, JR. ET AL.

[No. 249, September Term, 1972.]

*Decided January 9, 1973.*

The cause was argued before ORTH, C. J., and POWERS, SCANLAN and DAVIDSON, JJ.

*Lester H. Crowther* for appellants.

*Philip T. McCusker,* with whom were *Piper & Marbury* on the brief, for Goodyear Tire and Rubber Company and Travelers Insurance Company, part of appellees. No brief filed on behalf of Robert J. Ferris, Jr., other appellee.

ORTH, C. J., delivered the opinion of the Court.

The only question presented on this appeal is who, within the contemplation of the Workmen's Compensation Act, was the employer of Robert J. Ferris, Jr.

Under date of 8 June 1971 Ferris made claim with the Workmen's Compensation Commission (the Com-

mission) for compensation for injuries received on 5 June 1971 at 1:25 p.m. when "a fellow employee started a lift and my right hand got caught in the lift, injuring my right hand, arm, shoulder and neck." The claim form stated his employer to be "Burn Security Agency, 1800 N. Charles Street." His weekly wage was $205. The location of the plant where the accident occurred was "Goodyear Tire & Rubber Co., Mt. Royal Ave." (Goodyear), and the name of the foreman was "Mr. Haags." The nature of the employer's business was given as "security." The Commission noted on the claim form that the correct name of the employer was "William J. Burns International Detective Agency Inc." (Burns), and that its insurer was "Standard Fire Ins. Co." (Standard). The claim was docketed as No. A-513650.

Under date of 6 July 1971 Ferris filed another claim form with the Commission. On this form the date and time of the accident, the description of the accident, the amount of weekly wages, the location of the plant where the accident occurred and the name of the foreman, were the same as set out in the claim of 8 June. But the name of the employer was stated to be "Goodyear Tire & Rubber Company, Mt. Royal Avenue—1201 W. Mt. Royal." The nature of the employer's business was not given. The Commission noted on the claim form that the insurer of Goodyear was "Travelers Ins. Co." (Travelers). The claim was docketed as No. A-517779.

Six issues were raised before the Commission and an evidentiary hearing was held on 21 October 1971. The findings of the Commission were set out in the Award of Compensation under date of 3 November 1971:

> The Commission finds on the third issue that claim No. A-517779 is a duplicate of claim No. A-513650; and therefore the Commission has concluded to consolidate the above stated claims; and finds on the first issue that the claimant sustained an accidental injury arising out of and in the course of his employment on June 5,

1971; and finds on the second issue that the disability of the claimant is the result of the aforementioned accidental injury, and that as a result thereof, the claimant was temporarily totally disabled from June 5, 1971 to August 12, 1971 inclusive; and finds on the fourth issue that the correct insurance carrier in both claims is Standard Fire Insurance Company and finds on the fifth issue that the claimant was not an employee of Goodyear Tire and Rubber Company and [on the sixth issue] that the correct employer is William J. Burns International Detective Agency, Inc. Average weekly wage—$205.00."

Burns and Standard, feeling aggrieved by the order, appealed. They presented only one issue of fact to the Superior Court of Baltimore City: "Was Robert J. Ferris, Jr., Claimant, an employee of William J. Burns International Detective Agency, Inc. at the time of his injury on June 5, 1971?" By stipulation, the court considered the issue on the record and proceedings before the Commission. The answer of the court to the question before it was "Yes", thereby affirming the decision of the Commission. On 13 April 1972 judgment nisi was entered in favor of Ferris for costs. A motion for a new trial was made by Burns and Standard and denied. On 27 April 1972 judgment absolute was entered in favor of Ferris for costs of suit. Burns and Standard noted an appeal to this Court.

There was nothing nefarious in the filing of two claims by Ferris concerning the one accident. It seemed patent that his injury arose out of and in the course of his employment, but due to the unusual circumstances surrounding that employment, he desired not to chance being precluded from receiving compensation to which he was entitled because he designated an employer who might be found not responsible for the payment of such compensation. So he designated one employer in the first

claim and another employer in the second and there was clearly no intent to mislead.[1]

The unusual circumstances surrounding the employment of Ferris at the time he sustained the personal injury stemmed from inventory shortages Goodyear had been experiencing. The Assistant District Manager, Retail, of Goodyear testified that "we had put in a lot of measures we thought would help curb" the shortages to no avail, so they consulted Burns. "[W]e explained our problem; that we would like to get someone to come in and so as not to be so obvious we would have to work a deal where we would go through the formality of filling out an application. We would go through the formality of introducing him to the manager downstairs, in our formal procedure to get someone into our service department is to start him as a trainee anywhere. We start our store manager trainees and all our management trainees coming through there. So it was a natural thing to make it a management trainee in the eyes of everybody in the store. No one in the store knew, from the manager on down, knew that the gentleman was working as an undercover agent and the only other ones were two other men in my capacity that knew that he was even in the building, period. Even the district manager didn't know. * * * That's the only way we could do it as far as we were concerned. That's why we had to pay him locally as we would any other employee. * * * Our agreement was, once again in order to keep everything in line, we had to start him at the salary we would start trainees at. It was at that time six hundred a month and as far as we were concerned we paid him the six hundred and on top of that Burns billed Good-

---

1. His attorney wrote the Director of Claims of the Commission under date of 12 August 1971:

"Unfortunately, I don't know where I stand in this case, because both employers are contributing to the payment of the compensation, and it hasn't yet been resolved who will accept full responsibility.
I would suggest therefore that until the companies can agree with one another, both cases remain open. If you have any objection, please advise."

year in New Brunswick, New Jersey, our regional headquarters, for the additional fee that was involved. We couldn't get involved with paying bills because once again they did wonder in the store what was the money for. So they were billed in Brunswick, New Jersey."

A written contract was executed under date of 5 April 1971 between Burns and Goodyear. "Contractor" as used in the contract was stated to mean "an employee of Burns whose services are leased to The Goodyear Tire & Rubber Company." For $350 a month per Contractor, payable by Goodyear, Burns agreed to provide "the services of our organization to assist you in increasing the general efficiency of your plant." The $350 monthly charge covered a work week of 48 hours for the Contractor. The Contractors Goodyear may request Burns to supply were to be assigned to work as management sales trainees and placed on Goodyear's payroll at the regular rate of wages paid by Goodyear to such employees. If for any reason Contractor's wages fell below $175 a week "straight time", the difference between the wages actually paid and $175 was to be billed by Burns to Goodyear. The Contractor was to retain the wages paid by Goodyear, who was also to reimburse the Contractor "for any necessary incidental expenses authorized" by it. Goodyear agreed not to hire for its sole employment, for a period of at least one year after termination of the contract, any Contractor originally sent it by Burns. The contract could be terminated by Goodyear at any time after the first 30 days by it giving Burns one week's written notice in advance. The contract included this clause:

> "It is also understood and agreed that, for all purposes, the Contractor is and is to be considered your employee to the extent of all payments made by you directly to him and retained by him, and the employee of this Agency only to the extent of any payments made by us directly to him."

Noted on the contract was that reports and bills marked "personal and confidential" were to be sent to the Regional Manager of Goodyear at an address in New Brunswick, New Jersey.

Ferris was one of the Contractors Burns sent Goodyear.[2] The local manager of Burns testified that Ferris was at Goodyear only a day and a half when he was injured. His guaranteed pay was $175 a forty hour week to which was added $5 for each daily written report he submitted, for a total amount of $205.

Ferris testified that in June 1971 he was hired by Burns "specifically for the job at Goodyear as an undercover person for that job alone. It was made clear to me that there was a possibility of other jobs after this one but it was nothing definite." He characterized his job as "undercover work" with the duty to report back to Burns any findings he "came up with". "Each day I was to write a report detailing the day's activities, whether there were anything suspicious or not. I was to report it and I mailed these reports to the office. * * * To the Burns office." He explained his compensation:

> "Well, the arrangement was I was to receive a paycheck or cash amount from Goodyear and I was to present the pay stub to Burns Detective Agency, they would pay the difference between what I received from Goodyear and one hundred seventy-five dollars. In addition to the one hundred seventy-five dollars I was to receive five dollars for each report and that's six reports a week. That would bring the total pay to two hundred and five dollars a week. The Burns Agency had a policy that, as it was reported to me, that undercover investigators were guaranteed one hundred seventy-five dollars and that if the company—if the client com-

2. The local manager of Burns testified that Burns had several undercover men assigned to the Goodyear store in the identical way in which Ferris was assigned.

pany did not pay that as the salary then the detective agency would pick up the difference."

He described the procedure by which he was hired by Goodyear. He made an application for a job and the district manager arranged for him to be interviewed. "The district manager had approved of me. They were concerned that the person that took the job looked right for the job, you know, fitted in that kind of thing." On cross-examination by the attorney for Standard it was elicited that Ferris did not know what wages Goodyear would pay him. "It was immaterial to me since I was going to get two hundred five a week no matter what I was paid." His immediate boss at Goodyear was the foreman who told him what to do. He described the work he did as requiring "basic mechanical skills, being able to use your muscles, your hands. For instance, they wanted the people who were to be managers to know the work from the ground up and a lot of the work seemed to be changing, taking old tires off of rims and putting new tires on the rims. So, what you did was take, put the car up in the air, take the tire off, let the air out of the tire, break it down on this machine. You put it on this machine which pushed the tire down away from the rim. You took a metal bar and removed the tire. This kind of thing." Cross-examination by the attorney for Travelers adduced that if it had not been for Burns he would not have been at Goodyear.

Several criteria have been applied from time to time in determining the existence of an employer-employee relationship:[3] the right to control and direct the worker in the performance and manner of doing the work (declared by the Court of Appeals in *Thompson v. Paul C.*

---

3. It has been consistently held that the words "employer" and "employee" as they appear in the Workmen's Compensation Act are the equivalent of and synonymous with the words "master" and "servant", and that therefore the rules for determining the existence of the relation of employer and employee under the Act are the same as the common law rules for ascertaining the relation of master and servant. *Anderson Nursing Homes, Inc. v. Walker*, 232 Md. 442, 444, and cases there cited.

*Thompson & Sons*, 258 Md. 391, 395, to be "the most decisive test"), the selection and engagement of the worker, the payment of wages, the power of dismissal, whether the work is a part of the regular business of the employer, whether the parties believe they were creating the relationship of employer and employee. *Idem; Loving Helicopters v. Kaufman*, 13 Md. App. 418, 423. Appellants apply each of the criteria to Ferris's relationship with Goodyear and conclude that Ferris was an employee of both Goodyear and Burns. The court below did not see it that way, nor do we.

In the unusual circumstances surrounding Ferris's association with Goodyear, we do not believe the existence of an employer-employee relationship between Ferris and Goodyear may properly be determined by relying exclusively on all the criteria usually applicable. The court below found from the evidence that it was never the intention of the parties, Burns, Goodyear, and Ferris, that Goodyear be the "employer" of Ferris or that Ferris be the "employee" of Goodyear. We think that the evidence was sufficient in law to support this conclusion. It was not disputed that Ferris was hired by Burns to perform work of an investigative nature. Burns guaranteed him a specific salary plus a set sum for a report he was required to submit to Burns daily. The investigative work he was assigned by Burns to perform was at Goodyear, and all that took place in the securing of a job with Goodyear, and all the conditions under which he worked there, were a facade, covering the true reason for his being there so as to enable him to accomplish the purpose of his employment by Burns. It was absolutely essential to the successful performance of his duties that he appear to be nothing more than an employee of Goodyear and it was for that reason and that reason alone that he went through the employment procedures regularly followed by Goodyear and was treated thereafter as any other employee of Goodyear in a comparable position was treated. He was never considered by Goodyear as one of its "manager-trainees" but as an "undercover

agent" of Burns. And it is clear that Ferris did not consider that he was being trained to fill a manager's position at Goodyear. In fact, Goodyear could not even employ him for itself even if it and he so desired, for at least a year after the contract between Goodyear and Burns expired.

We see nothing in the contract precluding the conclusion reached by the court below. Under the terms of the contract, as a "Contractor", Ferris was expressly an employee of Burns. The clause stating that "for all purposes, the Contractor is and is to be considered [Goodyear's] employee" was limited by the clauses which followed, "to the extent of all payments made by you directly to him and retained by him, and the employee of [Burns] only to the extent of any payments made by [Burns] directly to him." It may be properly construed, particularly in the light of the prior clause defining "Contractor" to mean an employee of Burns, as the court below implicitly construed it, as concerning only the manner of paying the amount guaranteed Ferris by Burns, and to establish responsibility for withholding taxes and other funds required to be withheld by employers.

By legislative mandate, in all proceedings pursuant to the Workmen's Compensation Act, the decision of the Commission is prima facie correct and the burden of proof is upon the party attacking the decision. Code, Art. 101, § 56 (c).[4] And where the terms and manner of employment are disputed and different inferences may be drawn therefrom, the issue as to the relation that

4. This has been construed to mean only that the party attacking the decision must prove in the trial court what he asserts. "His burden is to convince the Court or the jury that the Commission decided incorrectly in interpreting the facts, or deducing the inference from the facts, or construing the law applicable to the facts." He may rely upon the identical evidence that was presented before the Commission. Thus "where the Commission has considered conflicting evidence of essential facts, and has drawn one of two different permissible inferences, there may be imposed upon the party attacking the decision of the Commission merely a burden of persuasion, and not necessarily a burden of additional proof." *Williams Construction Co. v. Bohlen*, 189 Md. 576, 580.

existed between the parties is a mixed question of law and fact, to be determined by the trier of facts. *Winters v. Payne,* 13 Md. App. 327, 335.[5]

We find that appellants did not meet their burden of proof to establish that Burns was not the sole employer of Ferris. We cannot say that the court below was wrong in not being persuaded by appellants that the Commission decided incorrectly in interpreting the facts, or in deducing inferences from the facts or in construing the law applicable to the facts. We hold that the court below was correct in its conclusions of law, and was not clearly erroneous in its judgment on the evidence, Maryland Rule 1086, in deciding that Burns was the sole employer of Ferris.

Appellants suggest that in any event Goodyear should be responsible for a portion of the compensation benefits awarded Ferris because he was within the ambit of the "lent employee" situation. See *Thompson v. Paul C. Thompson & Sons, supra,* at 395. They quote Larson's Workmen's Compensation Law, Vol. 1A, § 48:00:

> "When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:
>
> (a) The employee has made a contract to hire, expressed or implied, with the special employer;
> (b) The work being done is essentially that of the special employer; and
> (c) The special employer has the right to control the details of the work.
>
> When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.
>
> Employment may also be 'dual', in the sense

---

5. Where the essential terms and manner of employment are undisputed, the question of the relationship that existed between the parties is one of law for the court. *Idem.*

that, while the employee is under contract of hire with two different employers, his activities on behalf of each employer are separable and can be identified with one employer or the other. When this separate identification can clearly be made, the particular employer whose work was being done at the time of the injury will be held exclusively liable."

The evidence was legally sufficient, as we have indicated, to show that the work being done by Ferris was not essentially that of Goodyear but of Burns. Nor was his employment, in the facts and circumstances here existent, "dual" so that his activities were separable. We conclude that Ferris was without the ambit of the "lent employee" rules of law.

Appellants argue that the holding that Burns was the sole employer of Ferris "creates a severe injustice" for the reason that Standard, Burns's insurer, would be required to pay the entire compensation benefits awarded on the basis of earnings of $205 per week although being entitled to collect premiums based on earnings of only $30 per week, pointing out that Travelers, Goodyear's insurer, was entitled to collect premiums based on $175 per week. The amount of compensation insurance premiums the insurer of each of Burns and Goodyear may have been entitled to receive in the circumstances existent is not determinative of the existence of the employer-employee relationship which is here the issue. We do not find *Crowner v. Baltimore Butchers Ass'n,* 226 Md. 606, cited by appellants to be factually apposite.[6]

Appellants suggest that if the holding of the Commission is affirmed, Ferris would probably have a right of action against Goodyear on the basis that the injuries sustained were caused by the negligence of an employee of Goodyear, citing Code, Art. 101, § 58. We are con-

---

6. *Crowner* held that when a claimant had two employers, the average weekly wage paid by an employer for whom the claimant was working when injured is the basis for the compensation benefits.

strained to note that concern for Goodyear, especially of such a speculative nature, is not material to the issue before us.

> *Judgment affirmed; appellants to pay costs.*