634 A.2d 969

**GOOD SAMARITAN HOSPITAL, INC.**

v.

**Mary P. JACOBSON.**

**No. 1329, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Dec. 29, 1993.

Laura C. Walters (E. George Bendos and Harlan, Brattan & Bendos, on the brief), Baltimore, for appellant.

Sheldon H. Levitt, Owings Mills, for appellee.

Argued before BISHOP, FISCHER and DAVIS, JJ.

DAVIS, Judge.

Good Samaritan Hospital, Inc. appeals from a judgment of the Circuit Court for Baltimore County that reversed findings by the Workers' Compensation Commission that an injury occurring during a pre-employment physical was not compensable and that an employer-employee relationship did not exist between appellant and Mary P. Jacobson, appellee herein, on January 4, 1991. Appellant disputed a claim for workers' compensation benefits filed by appellee. The Commission found that appellee was not an employee and, by Order dated January 5, 1992, found that appellee did not sustain an acci-

dental injury arising out of and in the course of her employment, and that appellee's disability was not the result of the alleged accidental injury.

Appellee filed an appeal to the Circuit Court for Baltimore County. On April 23, 1993, the circuit court reversed the Commission's Order and remanded the case to the Commission. This appeal followed.

The parties present the following questions:

I.  Did the trial court err as a matter of law in finding that [appellee] was a covered employee?

II. Did the trial court err as a matter of law in finding that [appellee] sustained an accidental injury arising out of and in the course of her employment?

## FACTS

Pursuant to Md. Rule 8–207(b), the parties stipulate to the following facts:

Appellee, Mary P. Jacobson, applied to the Good Samaritan Hospital (the Hospital) for part-time employment by sending them a resume in October or November of 1990. She was interviewed at the Hospital in December 1990. After personal interviews, there was no agreement as to her salary for employment. In subsequent telephone conversations, an hourly rate was agreed upon by both parties, and appellee was told to report for a physical examination on January 4, 1991. The Hospital testified that the physical examination was a "pre-employment physical." Appellee denies that the physical examination was a pre-employment physical and asserts that she was merely told, upon arrival at the Hospital, to go for the examination and a blood test.

In route to the lab, appellee fell and injured her knee. Two doctors at the hospital attended to her and then sent her for her blood test. Thereafter, she reported back to the Personnel Department and was introduced to employees of that department. Subsequently, she left the Hospital and reported to work on January 7th and 8th, consistent with her part-time

employment work schedule. Shortly thereafter, because of a family emergency, she was unable to continue to work and applied for and received leave from the Hospital. She returned to employment with the Hospital for a short period of time in March 1991 and again left the employment of the Hospital.

Payroll records submitted at the Commission and exhibits in the circuit court indicate that appellee was paid for two hours on January 4, 1991 (the day of the accident), five and one-half hours on January 7, 1991 (the following Monday), and seven and one-half hours on January 8, 1991 for a total of 15 hours. The "hire date" on the "Hospital Orientation Participation" form bears the date "1/7/91." Also the official personnel "Employee Record" indicates that the effective date of her employment was January 7, 1991. State and federal taxes were deducted from the money appellee received for the pay of January 4, 1991.

The Hospital argued that the payment made to appellee for the two hour period of time on January 4, 1991 was an error,[1] and that the physical examination performed on that date was a condition precedent to her employment. Appellee argued that she was "paid wages" for two hours on January 4, 1991 and that the physical examination performed on that date was not a condition precedent to employment.

By Order of January 6, 1991, the Commission found that appellee did not sustain an injury occurring in the course of her employment and that there was not an employer-employee relationship on January 4, 1991 by and between the parties. The circuit court reversed the Commission and found in favor of appellee.

---

1. At oral argument, appellant's counsel, when asked whether Good Samaritan ever corrected what it contended was an error, responded that it had not for benevolent reasons. It is apparent that processing of appellee's paperwork must have been completed prior to the physical examination in order for her to be on the payroll. Administratively, it would seem there was little else to be done to effectuate full employment.

## LEGAL ANALYSIS

■ The crux of this appeal depends upon whether an injury occurring during a pre-employment physical examination arises out of and in the course of employment. We have been unable to find any Maryland cases on this point, and the parties agree that it raises an issue of first impression for this Court. Courts of other states have addressed this issue but are evenly divided in the outcome.

We shall first describe the analytical paths followed by our sister jurisdictions. The jurisdictions are seemingly uniform in their determination that injuries occurring during the analogous pre-employment physical agility tests, often required by police departments, are not covered by workers' compensation. *See, e.g., Younger v. City of Denver,* 810 P.2d 647 (Colo.1991); *Sellers v. City of Abbeville,* 458 So.2d 592 (La.Ct. App.1984); *Dykes v. State Accident Ins. Fund,* 47 Or.App. 187, 613 P.2d 1106 (1980).

The states are less uniform in their treatment of regular physical examinations not involving agility tests. Both California and New York have determined that their workers' compensation laws do not cover injuries occurring during a pre-employment physical examination. In *Esters v. General Motors Corp.,* 200 Cal.App.3d 1278, 246 Cal.Rptr. 566 (1988), the employer required an individual to submit to and pass a pre-employment physical examination as a precondition to re-employment by General Motors.[2] The examination was performed at the place of employment and included a chest X-ray. General Motors told Esters that he had passed the examination, and Esters began work the next day. Several months later, Esters began to have trouble breathing, and it was established that he had a cancerous lesion on his left lung. Esters then sued General Motors for negligence, alleging that the company had either misdiagnosed or failed to diagnose his cancerous condition. General Motors asserted as an affirma-

---

**2.** The individual previously worked for General Motors but had been laid off during a plant shut down. Two years later, General Motors offered him employment at a different plant.

tive defense that the workers' compensation law provided Esters's sole remedy for this injury.

The court disagreed. Applying two factors, the right of control by and benefit to the employer, the court determined that an employment relationship is created only when the degree of control simulates that which the employer exercises over its actual employees. *Id.*, 246 Cal.Rptr. at 569. The court did not believe a pre-employment physical examination sufficiently paralleled actual working conditions and thus found for Esters. The court, however, qualified its holding by stating:

> [T]he policy considerations in our case differ from those in cases where the court was guided by the policy of liberal construction to extend benefits to a claimant who had been denied them. Here, the appellant seeks to avoid the status of employee which General Motors would "thrust upon" him. Without in the least denigrating the policy of liberal construction, we are, nonetheless, inclined to view the putative employment relationship more critically when it is urged by the employer as a shield, rather than by a claimant seeking benefits.

*Id.* at 570 (citations omitted).

Likewise, a New York court failed to find an employment relationship when the employer sought to limit an individual's recovery to that provided under the workers' compensation law. *Rastaetter v. Charles S. Wilson Mem. Hospital,* 80 A.D.2d 608, 436 N.Y.S.2d 47 (1981). The New York appellate court considered several factors in determining whether an employer-employee relationship existed, including the right to control, the method of payment, who furnished the equipment, the right to discharge, and the relative nature of the work. *Id.* The court did not analyze the factual context but merely concluded that "these factors demonstrate that a pre-employment physical examination would not be covered by the Workers' Compensation Law." *Id.*, 436 N.Y.S.2d at 47–48.

In contrast, courts in Texas and Arkansas have found that an injury occurring during a pre-employment physical exami-

nation are compensable injuries under the workers' compensation laws. In *Lotspeich v. Chance Vought Aircraft*, 369 S.W.2d 705 (Tex.Civ.App.1963), the plaintiff brought an action for damages resulting from the employer's failure to inform her that she had active tuberculosis, a condition alleged to have been disclosed as part of her pre-employment physical exam. The employer asserted that the remedy given by the workers' compensation law was exclusive even though the injury complained of was not compensable under that law. The court agreed and stated:

> But even if we were to consider that the cause of action arose at the very time of her physical examination, and before she actually began her work for the Company, we would be compelled to hold that, so far as the applicability of the Workmen's Compensation Law is concerned, she was an employee and subject to and covered by that Law while being given the physical examination.

*Id.* at 709 (citations omitted). Unlike the *Esters* and *Rastaetter* courts, the Texas court found that the physical examination, conducted on the employer's premises, was entirely for the benefit of the employer and under its direction and control. *Id.*

An Arkansas court likewise found that the workers' compensation law provided an individual's exclusive remedy against his employer and that pre-employment physical examinations are "wholly for the benefit of the employer and under his direction and control." *Woodell v. Brown & Root, Inc.*, 2 Ark.App. 106, 616 S.W.2d 781, 783–84 (1981). The individual brought an action for personal injuries alleged to have occurred during a pre-employment physical examination. The employer attached an affidavit to its motion for summary judgment, asserting that the work records indicated appellant worked for appellee on the date of the injury and was paid for his labor on that date. The court found that

> [i]t is not necessary ... that the employee be injured while performing the specific task for which he has been employed. It has been held that he is equally covered if he is injured while performing some task other than that

assigned to him, if it be in connection with his employment and required by his employer.

*Id.,* 616 S.W.2d at 784 (citation omitted).

Unlike the situations addressed by other jurisdictions, in this case Good Samaritan contends that Jacobson was not an employee covered by workers' compensation. Thus, we must address the policy considerations guiding how to view this "putative employment relationship."

Maryland Courts have consistently held that the Workers' Compensation Act, Title 9, Md. Labor and Employment Code Ann. (1993), should be "construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes." *Bethlehem–Sparrows Pt. Shipyard, Inc. v. Hempfield,* 206 Md. 589, 594, 112 A.2d 488 (1955). Thus, this Court extended the scope of coverage to include an injury occurring while an employee picked up his tools from the job site a few days after being discharged. *Nails v. Market Tire Co.,* 29 Md.App. 154, 160–61, 347 A.2d 564 (1975).

■ Maryland Courts apply several factors in determining the existence of an employer-employee relationship: the right to control and direct the worker in the performance of the work, the selection and engagement of the worker, the payment of wages, the power of dismissal, whether the work is a part of the regular business of the employer, and whether the parties believed they were creating the relationship of employer and employee. *William J. Burns Int'l Detective Agency, Inc. v. Ferris,* 16 Md.App. 568, 575–76, 299 A.2d 487 (1973). The Court of Appeals found that the right to control and direct the worker was the most important of these factors. *Thompson v. Paul C. Thompson & Sons,* 258 Md. 391, 395, 265 A.2d 915 (1970); *Ferris,* 16 Md.App. at 575–76, 299 A.2d 487.

■ Based on these factors, we hold that an injury occurring during a pre-employment physical examination can con-

stitute a compensable injury. Thus, the trial court did not err as a matter of law.

We hold that, if an employer requires an individual to receive a physical examination on its premises and the reason for the physical examination is for the employer's benefit, there exists sufficient direction and control by the employer for the examination to be within the scope of coverage by the workers' compensation law. An employer's purpose for a physical examination may include concerns about the cost of providing future medical coverage to the prospective employee or determining the potential for liability for an employee's contagious condition. Unlike physical agility tests that are used to allow a job applicant to demonstrate his/her qualifications for a particular job, physical examinations often provide information to the employer for the employer's benefit.

Applying the factors to the case *sub judice*, we note that appellant told appellee to report to the job site for the physical examination, sent her to the lab for blood tests after the accident occurred, and paid her for the time spent at the site for the physical. Given these facts and the policy to construe the provisions of the Workers' Compensation Law liberally in order to effectuate its benevolent purposes, the circuit court properly determined that the finding of the Commission was erroneous.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**