**Leo T. VOGELSANG, Plaintiff,**

v.

**WESTERN MARYLAND RAILWAY COMPANY, Defendant.**

Civ. A. No. J–80–1292.

United States District Court, D. Maryland.

June 18, 1981.

William B. Baker, Baltimore, Md., C. Richard Grieser, Columbus, Ohio, for plaintiff.

Thomas L. Samuel, H. Russell Smouse, Ransom J. Davis, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

SHIRLEY B. JONES, District Judge.

Plaintiff has brought this action under the Federal Employers' Liability Act (FELA) and the Safety Appliance Acts to recover for injuries sustained in an accident on March 26, 1980, when he fell from atop a railroad car. Defendant moved to dismiss, for failure to state a cause of action and lack of subject matter jurisdiction, on the ground that plaintiff's exclusive remedy is under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950. Plaintiff has opposed the motion, and a hearing is not deemed necessary, see Local Rule 6. Matters outside the pleadings have been raised by both parties and considered, and the motion has been treated as one for summary judgment under F.R.Civ.P. 12(b).

The parties have stipulated to the operative facts. Plaintiff was employed by the defendant railroad as a dock helper. The railroad has a yard, with four tracks leading to and extending onto Port Covington Pier 6, which adjoins navigable water. On the date in question bauxite ore was being unloaded from a ship alongside the pier into railroad cars on the pier. The ore was removed by crane to a series of hoppers, all part of a structure over the pier, then transferred by chute from the hopper to the cars through openings in the tops of the cars. Plaintiff was stationed atop the railroad cars to open and close their top lids and adjust the gates on the chute for the ore to flow into the cars. He also signaled to the engineer of a locomotive behind the cars for the cars to be moved to position them under the chute for loading. Plaintiff fell from the top of a railroad car while engaged in this operation.

■ As an employee of a railroad engaged in interstate commerce, plaintiff would be entitled to bring this FELA action but for the operation of the LHWCA. The remedy under that act is exclusive, 33 U.S.C. § 905. The question presented here is whether plaintiff's injury is covered under it. The LHWCA provides payment for disability from "an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)." 33 U.S.C. § 903(a).

Covered employers are those "any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States" including the adjoining areas set forth above, *id.* § 902(4), and covered employees are persons "engaged in maritime employment...," *id.* § 902(3), including longshoremen and persons engaged in longshoring operations.

These provisions, enacted in 1972, establish a dual situs and status test for coverage. There is no question that the situs test is met, plaintiff's injury having occurred on a pier adjoining navigable waters. Defendant is a covered employer; the stipulated facts concerning the operation reveal that at least some of its employees engage at least partly in maritime employment in the operations on the pier. Plaintiff concedes that these requirements are met. ■ The question is whether plaintiff meets the status test, that is, whether he was engaged in "maritime employment" within the meaning of the LHWCA, at the time of injury, *e.g., Taylor v. Zapata Haynie Corp.*, 623 F.2d 332, 334 (4th Cir. 1980). Plaintiff falls within the coverage of the LHWCA, as interpreted in recent Supreme Court and Fourth Circuit cases. An employee involved in any of the steps in transferring cargo from a vessel to land transportation is covered by the LHWCA. *P. C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 82–83, 100 S.Ct. 328, 336–337, 62 L.Ed.2d 225 (1979);

*Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 266–67, 97 S.Ct. 2348, 2358, 53 L.Ed.2d 320 (1977). Plaintiff's work on this occasion and customarily (Plaintiff's Answer to Interrogatory 27) was the final step in moving the cargo from the hold of the ship directly into the railroad cars. This operation was a "longshoring operation" within the broad meaning of the LHWCA, and plaintiff was an integral part of it. *See Northeast Marine Terminal Co. v. Caputo*, 432 U.S. at 267 n.28, 97 S.Ct. at 2359 n.28 (persons bringing cargo directly from ship to a truck are engaged in maritime employment). The operation was no different in substance from putting the cargo in a consignee's truck, the last step in the unloading process. *Id.* at 272, 97 S.Ct. at 2361; *Taylor v. Zapata Haynie Corp.*, 623 F.2d at 334.

*Conti v. Norfolk & W. Ry.*, 566 F.2d 890 (4th Cir. 1980), upon which plaintiff relies, does not require a different result. The Fourth Circuit held that the workers were not engaged in an integral part of the ship loading process and that their duties were not of a traditionally maritime nature. *Id.* at 895. Here, plaintiff was an integral part of the unloading process. *Cf. Price v. Norfolk & W. Ry.*, 618 F.2d 1059, 1062 (4th Cir. 1980) (distinguishing *Conti* on the basis that there the employees were employed on cars hauling coal to loaders, not on the loaders themselves).

Since the remedy under the LHWCA is exclusive, 33 U.S.C. § 905, this action must be dismissed.