467 A.2d 559

James W. STANLEY

v.

The WESTERN MARYLAND RAILWAY COMPANY.

No. 1919, Sept. Term, 1982.

Court of Special Appeals of Maryland.

Nov. 4, 1983.

Certiorari Granted April 5, 1984.

236

Paul D. Bekman, Baltimore, with whom were Daniel S. Katz, and Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A., Baltimore, on brief, for appellant.

George F. Pappas, Baltimore, with whom were H. Russell Smouse, Melnicove, Kaufman, Weiner & Smouse, P.A., Baltimore, and John P. Higinbothom, Towson, on brief, for appellee.

Argued before GILBERT, C.J., and MOYLAN and WEANT, JJ.

WEANT, Judge.

The appellant, James W. Stanley, had been employed by the Western Maryland Railway Company (Western Maryland) since 1942. Beginning in 1955 or 1956 and continuing through 1980, Stanley operated a crane known as the "Number 1 crane" at the Curtis Bay Ore Pier. It was used to unload ore from ships docked there. According to Stanley, the crane produced ". . . a loud roar. It's a hydraulic pump that pumps pressure and it's a real high pitched roar, a humming, like a humming roar . . . ." After operating the crane, Stanley claims to have experienced a ringing in his ears for approximately one hour. He first noticed difficulty in hearing at home and at work in 1977. Stanley sought testing and treatment for this problem in 1978; he currently wears a hearing aid in both ears.

On 14 November 1979 Stanley filed his declaration in what was then the Superior Court of Baltimore City seeking damages under the Federal Employer's Liability Act (FELA), 45 U.S.C. §§ 51 *et seq.* (1981), alleging negligence on the part of Western Maryland. That company filed a Motion for Summary Judgment, claiming that Stanley's exclusive remedy was pursuant to the Longshoremen's and Harbor Worker's Compensation Act (LHWCA or the Act), 33 U.S.C. §§ 901 *et seq.* (1980), as amended, 26 November 1972. The trial court granted the motion and entered judgment for Western Maryland, from which Stanley now ap-

peals. This action carries with it the novel issue of whether the remedy for an occupational disease lies exclusively within the LHWCA when the employee was covered under that Act only after its amendment but was exposed to the injurious stimuli both before and after he was covered.

The appellant requests this Court to address two questions:

I. Was the lower court in error in holding that Stanley's exclusive remedy was pursuant to the provisions of the LHWCA and not the FELA?

II. Was the lower court's action in granting the Motion for Summary Judgment erroneous as there were no facts in the record to demonstrate that Stanley's binaural hearing loss was due solely to his post-1972 exposure?

### The Longshoremen's and Harbor Worker's Compensation Act

Prior to 26 November 1972, the Longshoremen's and Harbor Worker's Compensation Act applied only to maritime workers injured "upon the navigable waters of the United States." In 1972, Congress amended the LHWCA, broadening the definition of "navigable waters" to include ". . . any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining areas customarily used by an employer in loading, unloading, repairing or building a vessel." 33 U.S.C. § 903(a). Congress also amended the definition of persons covered by the LHWCA. In order to receive benefits under the Act, the injured employee must be "engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker . . . ." 33 U.S.C. § 902(3).

The purpose of the 1972 amendments was to remedy the disparity in benefits between state and federal worker's compensation coverage depending on which side of the water's edge the accident occurred. *See Northeast Marine*

*Terminal Co., Inc. v. Caputo,* 432 U.S. 249, 262–64, 97 S.Ct. 2348, 2356–57, 53 L.Ed.2d 320 (1977), citing to H.R.Rep. No. 1441, 92d Cong., 2d Sess. 10–11 (1972), U.S.Code Cong. & Admin.News 1971, p. 4698. Under the amended Act, courts and agencies now look to the "status" of the injured worker as well as to the "situs" of the injury to determine coverage.

The LHWCA, both before and after the 1972 amendments, had also provided that if an employee is within its coverage, the LHWCA furnishes his exclusive remedy against his employer. *See* 33 U.S.C. § 905(a); *Caldwell v. Ogden Sea Transport, Inc.,* 618 F.2d 1037, 1048–49 (4th Cir.1980).

Both parties agree that prior to the 1972 amendments to the LHWCA, the LHWCA did not cover pier-based exposure to injurious stimuli, such as Stanley's, but that such pier-based exposure is within the LHWCA after 1972. The parties also agree that Stanley was subjected to the noise of the Number 1 crane from 1955 or 1956 until after his hearing problems appeared in 1977.

We turn now to the questions posed by the appellant.

Stanley claims that the trial court erred in holding that his remedy is exclusively within the LHWCA. Because any injury resulting from pier-based exposure to harmful stimuli prior to 26 November 1972 was not covered by the LHWCA, Stanley argues that recovery under the FELA should be available for injury received before that date.

Stanley's argument centers around *Verderane v. Jacksonville Shipyards, Inc.,* 6 Ben.Rev.Bd.Serv. 642, BRB No. 76–244 (31 Aug. 1977). *See also Verderane v. Jacksonville Shipyards, Inc.,* 14 Ben.Rev.Bd.Serv. 220.15 (13 Aug. 1981) (appeal from the recommended decision on remand). The claimant, Verderane, was employed at the Jacksonville Shipyards from 1965 to 1974. 6 Ben.Rev.Bd.Serv. at 643–44. Throughout his employment at Jacksonville Shipyards, he was exposed to injurious noise. The claimant had experienced hearing problems and vertigo in the early 1960's, and suffered a recurrence of vertigo and a ringing in his ears in "either 1972 or 1973." *Id.* at 643.

Because Verderane's last position as Safety Manager was not a covered "status" under § 902(3) of the amended LHWCA, his employer argued that Verderane's injury was not compensable under the LHWCA. The Benefits Review Board[1] (BRB or Board) held that Verderane did not suffer an accidental injury during his employment as Safety Manager, but sustained an "occupational disease" caused or aggravated by exposure to injurious stimuli throughout his employment. 14 Ben.Rev.Bd.Serv. at 223. In determining jurisdiction under the LHWCA, the Board stated that the crucial factor is whether the worker was covered by the Act during the period of his exposure to injurious stimuli. *Id.*

The Board concluded that it would apply pre-amendment law to the period of exposure prior to 1972 and post-amendment law to exposure thereafter. The Board held that Verderane's entire disability was compensable under the LHWCA based on the pre-amendment law.

A closer examination of *Verderane* reveals that the pre- and post-amendment distinction the BRB draws does not alter the trial court's conclusion that Stanley's exclusive remedy lies under the LHWCA. The result in *Verderane* indicates that a claimant is eligible for compensation under the LHWCA if he can prove that he was subjected to any of the harmful stimuli which contributed to his injury while covered by the Act.

The BRB held in *Verderane* that the claimant's entire injury was covered under the pre-amendment act by virtue of his exposure to excessive noise prior to 1972, even though it also found that Verderane was exposed to injurious noise during his job as Safety Manager from 1972 to 1974. 14 Ben.Rev.Bd.Serv. at 224–25. The Board held that this fact "does not affect our determination that his vertigo is compensable based on the earlier exposure." *Id.* at 225. The

---

1. Congress created the Benefits Review Board to review appeals from administrative law judges on contested claims. *See* U.S.C. § 921(b). All appeals from the Benefits Review Board are made to the United States Court of Appeals. *Id.* at § 921(c).

Board did not allocate a portion of Verderane's disability to the period when he was covered by the LHWCA, and to the period when he was not, as Stanley argues should be done.

Instead, the BRB in *Verderane* supported the view it articulated in *McCabe v. Sun Shipbuilding & Dry Dock Co.,* 1 Ben.Rev.Bd.Serv. 509, 515, BRB No. 74–193 (4 June 1975), *rev'd on other grounds,* 593 F.2d 234 (3d Cir.1979): ". . . [T]he amount of time spent over navigable waters during exposure to harmful conditions is unimportant and will not lend itself to apportionment between jurisdictions as long as the exposure over navigable waters was sufficient to at least have aggravated the condition." *See also Fulks v. Avondale Shipyards, Inc.,* 10 Ben.Rev.Bd.Serv. 340, BRB Nos. 78–369A/B (3 Mar. 1979), *aff'd,* 12 Ben.Rev.Bd.Serv. 975 (23 Feb. 1981), 637 F.2d 1008 (5th Cir.1981), *cert. denied,* 454 U.S. 1080, 102 S.Ct. 633, 70 L.Ed.2d 613 (1981) (welder compensated under LHWCA for silicosis even though his only exposure to silica over navigable waters occurred on two occasions in 1967).

The appellant attempts to distinguish *McCabe* and *Fulks* by arguing that there is jurisdiction under the LHWCA only when the covered exposure aggravates the claimant's condition. Stanley states that no evidence exists to prove that his post-1972 exposure to noise aggravated his hearing loss. However, the record contains evidence that Stanley continued to operate the Number 1 crane from 26 November 1972 until at least mid-1980.

Recently, in *Newport News Shipbuilding & Dry Dock Co. v. Fishel,* the United States Court of Appeals for the Fourth Circuit explained that courts have expanded the "aggravation rule" so that if an employment injury "aggravates, accelerates or combines with a previous infirmity, the entire disability is compensable." 694 F.2d 327, 329 (4th Cir.1982). We are persuaded that Stanley's continued operation of the Number 1 crane after 1972, at the very least, combines with any disability he may have had before that. Indeed, the record makes no mention of any disability prior to 1975.

Finally, in an analogous situation, the BRB has held that there can be no allocation of liability between the state and federal acts for the same reasons that courts have rejected allocation among different employers. *McCabe, supra,* at 515; *Todd Shipyards Corp. v. Black,* 717 F.2d 1280 (9th Cir.1983). This is due in part to the difficulty in apportioning the degree of disability. Even in a situation in which a worker's pre-employment hearing loss had actually been measured, the Court of Appeals for the Fourth Circuit still ordered the employer to compensate the worker for his full hearing loss based on the aggravation rule. *Fishel, supra,* at 330.

■ We conclude that the appellant's post-1972 exposure to the noise of the Number 1 crane was sufficient to render his entire disability compensable under the LHWCA and that the trial court did not err.

*JUDGMENT AFFIRMED.*

COSTS TO BE PAID BY APPELLANT.