482 A.2d 881

James W. STANLEY

v.

The WESTERN MARYLAND RAILWAY COMPANY.

No. 23, Sept. Term, 1984.

Court of Appeals of Maryland.

Oct. 24, 1984.

Paul D. Bekman and Daniel S. Katz, Baltimore (Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A., Baltimore, on the brief), for appellant.

George F. Pappas, Baltimore (H. Russell Smouse, M. Melinda Thompson and Melnicove, Kaufman, Weiner & Smouse, P.A., and John P. Higinbothom, Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and JAMES C. MORTON, Jr., Specially Assigned Judge (Retired).

COUCH, Judge.

In this appeal we consider whether a dockworker's exclusive remedy for an occupational injury is under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA or the Act), 33 U.S.C. §§ 901 *et seq.* (as amended 1972), where part of the cause of injury occurred before the Act's coverage. The Superior Court of Baltimore City (now Circuit Court for Baltimore City) refused to apportion the employer's liability between the LHWCA and the Federal Employer's Liability Act (FELA), 45 U.S.C. §§ 51 *et seq.*, and ruled that the employee's exclusive remedy was under the LHWCA. The Court of Special Appeals affirmed. *Stanley v. Western Maryland Railway Co.*, 56 Md.App. 235, 467 A.2d 559 (1983). We agree.

## I

James Stanley began working for Western Maryland Railway Company in 1942. Starting in 1955 or 1956 and continuing through 1980, Stanley operated a crane located on the Curtis Bay Ore Pier. The crane emitted a loud roar which, over time, caused a deterioration in his hearing.

Appellant first became aware of his auditory impairment in 1977. His condition steadily declined, and today he must wear a hearing aid in each ear.

Stanley initiated a negligence action against Western Maryland under the FELA in 1979. On defendant's motion for summary judgment, the Superior Court for Baltimore City ruled that Stanley's exclusive remedy was under the LHWCA. The court (Thomas, J.) specifically denied appellant's request to proceed under the FELA for the portion of injury occurring before 1972, the year the LHWCA admittedly became applicable to Stanley. Defendant's motion was thereby granted.

On appeal, the Court of Special Appeals also refused to apportion defendant's liability between the two federal acts, and affirmed.

We granted certiorari to consider this important issue.

## II

The LHWCA was enacted by Congress in 1927 to end the confusion regarding the rights of injured maritime employees. Pub.L. 69–509, 44 Stat. 1424 (as codified at 33 U.S.C. §§ 901 *et seq.*); *Calbeck v. Travelers Insurance Co.*, 370 U.S. 114, 117–122, 82 S.Ct. 1196, 1198–1202, 8 L.Ed.2d 368, 371–74 (1962). Previously, seafaring workers were faced with the uncertainty, expense and delay of fighting out in litigation whether their particular case fell within or without state compensation schemes and remedies. *Calbeck, supra,* 370 U.S. at 121–22, 82 S.Ct. at 1200–01, 8 L.Ed.2d at 373–74. The LHWCA provided a uniform compensation act for all injuries to covered employees, *Id.* & n. 10, and facilitated the resolution of claims and granting of awards to the deserving worker, *South Chicago Coal & Dock Co. v. Bassett,* 104 F.2d 522, 526 (7th Cir.1939), *aff'd,* 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940).

As with any workmen's compensation legislation, however, trade-offs were exacted from employee and employer alike. In exchange for a certain and prompt recovery for claims against employers on behalf of the employee, employers were guaranteed specific limits on compensation and liability for the injuries of their workers. *Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs,* 449 U.S. 268, 280–282 & n. 24, 101 S.Ct. 509, 516 & n. 24, 66 L.Ed.2d 446, 456–57 (1980).

Moreover, while employees could now recover for mishaps regardless of their personal fault, 33 U.S.C. § 904(b), the LHWCA was to be the exclusive remedy for occupational injury, 33 U.S.C. § 905(a).

Both groups benefited from greatly expedited and simplified procedures concerning employee claims. Thus, the

LHWCA obviated the ever rising costs of litigation and insured against the unwarranted expenditure of court time. *Ramirez v. Toko Kaiun K.K.*, 385 F.Supp. 644, 649–50 (N.D.Cal.1974).

The Act was amended in 1972 to include those workers employed on piers and other areas adjoining navigable waterways. Pub.L. 92–576, 86 Stat. 1251 (as codified at 33 U.S.C. § 903(a)).

### III

We come now to Stanley's primary contention on this appeal. Before discussing this, however, it is necessary to briefly dispose of what is not in issue.

Stanley does not suggest that the LHWCA, as amended, is in all respects inapplicable to his present condition. Indeed, he concedes that the LHWCA provides coverage to a pier worker, such as himself, as of 1972.

■ Stanley is correct in this admission. Employees engaged in unloading cargo from ships docked at the pier are generally within the coverage of the LHWCA. *See, e.g., Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 266–67 & n. 27, 97 S.Ct. 2348, 2358–59 & n. 27, 53 L.Ed.2d 320, 334–35 (1977).

■ What Stanley does dispute, however, is that the LHWCA provides the exclusive remedy for his long term exposure to injurious noise. He observes that most of the exposure occurred prior to the 1972 amendments when he, as a dockworker, was not covered by the former LHWCA. He thereby seeks to apportion his claim between the LHWCA (for the amount of injury caused by his post-1972 exposure) and the FELA (for the pre-1972 exposure).

Stanley's sole authority for this proposition is language from a Benefit Review Board (Board) decision.[1] In *Verder-*

---

1. The Benefit Review Board was created by Congress in 1972 to review decisions of administrative law judges concerning claims un-

*ane v. Jacksonville Shipyards, Inc.*, 14 Ben.Rev.Bd.Serv. (MB) 220.15, BRB No. 76–244 (Aug. 13, 1981), an employee sought coverage under the LHWCA for injuries caused by his long term exposure to noise. The employee held numerous positions during his tenure at the maritime company, only some of which were covered by the Act. 14 Ben.Rev. Bd.Serv. (MB) at 222, 224.

The Board held that the Act provided coverage and compensation for Verderane's full injury. In the Board's opinion, the fact that the employee was exposed to additional excessive noise while working in non-LHWCA protected jobs did not affect the determination that Verderane's entire disability was compensable, based on the earlier exposure. *Id.* at 225.

The Board further noted that in determining the threshold question of jurisdiction, the Board "must apply pre-amendment law to the period of exposure prior to 1972 when the Act became effective, and post-amendment law thereafter." *Id.* at 223.

Stanley interprets this language as giving him a right to apportion liability between the FELA and the LHWCA. The appellant contends that prior to 1972, he was not covered by the latter statute, and thus could have brought an action under the FELA.[2] The fact that he may now be covered by the LHWCA should not preclude him from still pursuing his FELA claim. Stanley thus proposes to apportion liability between the two acts and, in reality, sue Western Maryland twice.

We disagree with Stanley's conclusion for several reasons.

---

der the LHWCA. Pub.L. 92–576, 86 Stat. 1261, 1262 (as codified at 33 U.S.C. § 921(b)).

**2.** FELA authorizes, *inter alia,* a worker employed by a railroad company to sue the company for damages arising out of the employer's negligence. 45 U.S.C. § 51.

First, Stanley's reliance upon *Verderane* is misplaced. As already mentioned, the Board utilized the quoted language and test solely to determine jurisdiction. Once the Board found that the LHWCA applied, it ruled that Verderane's entire claim was compensable.[3] *Verderane, supra,* 14 Ben.Rev.Bd.Serv. (MB) at 225.

Similarly, in the instant case, the LHWCA decidedly applies to at least a portion of Stanley's exposure to the harmful noise. He thus is not entitled to pursue a separate claim under the FELA.

Second, while the precise issue of apportioning a single employer's liability under the LHWCA and the FELA has not been previously addressed, our holding denying apportionment is in accord with the overwhelming weight of decisions from the courts and Board which have construed the LHWCA, and rejected the apportionment argument, in other contexts.

In *Traveler's Insurance Co. v. Cardillo,* 225 F.2d 137 (2d Cir.), *cert. denied,* 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955), the court refused to apportion liability among the various employers for whom a particular claimant worked. Rather, the last employer which exposed the employee to injurious stimuli was held liable for the full amount of the award, "even if the length of employment was so slight, that medically, the injury would, in all probability, not be attributable to that 'last employment.' " [footnote omitted]. *Id.* at 144–145.

The Second Circuit drew support for its conclusion from the legislative history surrounding the passage of the LHWCA, and the limited ability of the medical profession to diagnose long-term, but often slow-developing, occupational injury. To expect a proper correlation of the injury to

---

**3.** Even were we to find that the Board established a policy of apportionment, which we here do not, we need not defer to the Board's construction of the LHWCA in reviewing its determination for errors of law. *Potomac Electric Power Co., supra,* 449 U.S. at 278, n. 18, 101 S.Ct. at 514, n. 18, 66 L.Ed.2d at 454.

employment would, said the court, be unreasonable and administratively unfeasible. *Id.*

Congress was aware of the apportionment approach but nevertheless ruled out allocation to dispense with the difficulties and delays in administering the act and compensation. *Id.* at 145.

The Fourth Circuit has also held a single employer liable for the full amount of an employee's injury even though the amount of hearing loss attributable to the last of several employers was measured and documented. *Newport News Shipbuilding & Dry Dock Co. v. Fishel,* 694 F.2d 327, 328–29 (4th Cir.1982). The court reasoned that "the difficulty in apportioning the degree of disability between pre-employment (or non-employment) causes and employment cause and . . . the presumption of compensability grounded in the humanitarian nature of the Longshoremen's Act, and the burdens which would be placed upon longshoremen," compelled the conclusion against apportionment. *Id.* at 329–330. *See also Todd Shipyards Corp. v. Black,* 717 F.2d 1280 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984) ("Congress intended that the last employer be completely liable because of 'the difficulties and delays which would inhere in the administration of the Act' if attempts were made to apportion liability among several responsible employers." *Id.* at 1285. The goal of the LHWCA is to compensate workers as efficiently as possible. *Id.* at 1287 n. 6).

Additionally, in *McCabe, et al. v. Sun Shipbuilding & Dry Dock, Inc.,* Ben.Rev.Bd.Serv. (MB) 509, 514 (1975), *rev'd on other grounds,* 593 F.2d 234 (3d Cir.1979), the Board found that the entire occupational disability suffered by the worker was compensable under the LHWCA even though only ten percent of the injury was sustained during employment covered by the Act. The Board refused to allocate liability between state and federal compensation acts. *See also Fulks v. Avondale Shipyards, Inc.,* 10 Ben.Rev.Bd.Serv. (MB) 340, *aff'd,* 637 F.2d 1008 (5th Cir.),

*cert. denied*, 454 U.S. 1080, 102 S.Ct. 633, 70 L.Ed.2d 613 (1981) (employee's injury caused by exposure to silica entirely compensable under LHWCA and not state compensation law even though employee's exposure while on navigable waterway limited to two occasions).

Finally, appellant's argument would render superfluous § 905(a) of the LHWCA. This section provides that the LHWCA, where it applies, is to be the exclusive remedy for injured dockworkers.

Stanley concedes that the LHWCA, as amended, covers employees such as himself. The LHWCA is thus the exclusive remedy, and there can be no separate action maintained under the FELA absent the apportionment argument, which we reject. 33 U.S.C. § 905(a). *Cf. Price v. Norfolk & Western Railway Co.*, 618 F.2d 1059, 1060 (4th Cir.1980) (if claimant is a longshoreman his exclusive remedy is under the LHWCA and the District Court was without jurisdiction over his FELA claim); *Harmon v. Baltimore and Ohio Railroad Co.*, 560 F.Supp. 914, 915 (D.D.C.1983) (if plaintiff's injury is covered by the LHWCA, his exclusive remedy lies in receipt of benefits under that Act and defendant cannot be liable under the FELA); *Vogelsang v. Western Maryland Railway Co.*, 531 F.Supp. 11, 13 (D.Md.1981), *aff'd*, 670 F.2d 1347 (4th Cir.1982) (FELA available to plaintiff but for operation of LHWCA; since LHWCA applies, it provides exclusive remedy).

## IV

We see no reason to depart from the compelling and timeworn reasons against apportionment in the LHWCA field. The LHWCA provides an efficient and prompt remedy for injuries sustained by dockworkers, of which Mr. Stanley numbers himself. To require laborers who are exposed to long-term injury to sue under two or more federal statutes would be to impose cumbersome and possibly deleterious requirements upon those who most need prompt and efficient relief.

As its name implies, the LHWCA is typical workmen's compensation legislation. *Northeast Terminal, supra,* 432 U.S. at 258, 97 S.Ct. at 2354, 53 L.Ed.2d at 329. Congress has chosen to balance the difficult policy questions inherent in legislation of this kind by providing a certain measure of recovery for employees, with certain limits on liability for employers. *Potomac Electric Power, supra,* 449 U.S. at 281–82 & n. 24, 101 S.Ct. at 516 & n. 24, 66 L.Ed.2d at 456–57. Providing claimants an opportunity to pursue a separate claim when legislation is already tailored and in place would work an impermissible tour de force on the entire workmen's compensation scheme.

It would also require employees, in a scenario slightly different from the one presented here, to themselves prove what injury is attributable to various jobs, periods of employment, and employers. Workers would face the burden of maintaining costly litigation and run the risk of receiving no remuneration. *See, e.g., Lowery v. McCormick Asbestos Co.,* 300 Md. 28, 48, 475 A.2d 1168, 1179 (1984) (Maryland Workmen's Compensation Laws provide sure and certain relief for occupational injuries, eliminate the often impossible burden of proving medical causation of the disease to a particular workplace, and bar the apportionment or allocation of liability among employers.)

In the instant case, Stanley is apparently willing to run this gauntlet. Permitting this strategy would, however, violate the exclusivity of remedy provisions of § 905(a) of the LHWCA, and permit appellant to accomplish indirectly what he cannot do directly under the statute. Such a holding would also upset the intent of Congress to limit an employer's ultimate liability for maritime injury. *Potomac Electric Power, supra.*

We do not dispute that in certain circumstances, the proper calculation and apportionment of liability could theo-

retically be undertaken.[4]  We merely conclude that where Congress has so clearly spoken and established an exclusive remedy for injured dockworkers, this Court cannot frustrate that accomplishment by depriving an injured maritime worker of his just, required, and exclusive compensation.

JUDGMENT AFFIRMED.

APPELLANT TO PAY COSTS.

---

**4.** For example, Stanley offers to introduce for the first time on this appeal a learned treatise which theorizes the exact dates of ear injuries for long term exposure to noise.  Rop, Raber and Fischer, "Study of the Hearing Losses of Industrial Workers with Occupational Noise Exposure, Using Statistical Methods for the Analysis of Qualitative Data," 18 Audiology 181 (1976).  While this study would not change our analysis, we need not discuss its merits as it is not properly before us.  See Md. Rule 885.