BRINKLEY HEAVY HAULING Co. *v.* YOUNGMAN.

5-283                                                264 S. W. 2d 409

Opinion delivered February 8, 1954.

*Moore, Burrow, Chowning & Mitchell* and *Wright, Harrison, Lindsey & Upton,* for appellant.

*Sharp & Sharp,* for appellee.

GEORGE ROSE SMITH, J. This claim under the Workmen's Compensation Act arises from the accidental death of P. L. Youngman. The Tulsa Construction Company, as principal contractor, agreed to lay a gas pipeline for a subsidiary of the Arkansas Power & Light Company. In connection with this project Tulsa subcontracted the heavy hauling to Brinkley Heavy Hauling Company, a partnership in which the decedent was the active partner. While the work was in progress a large pipe accidentally rolled off a loaded truck and struck Youngman, killing him instantly. The appellees, his widow and children, filed this claim for compensation. The Commission found that Youngman was an employee of his own firm and was also a special employee of Tulsa, the principal contractor. An award was accordingly entered against both defendants and their insurance carriers. This appeal challenges both phases of the joint award.

We consider first the liability of the Brinkley partnership. This firm was composed of a farmer, a furniture dealer, and Youngman, who alone had experience in the trucking business. These three men formed a partnership for the purpose of purchasing a heavy hauling concern. Their agreement was that Youngman should devote his entire time to the business, not only as superintendent of the firm's employees but also as an active worker in the field. The other two partners contributed the firm's original capital, but they were not expected to, and did not, devote their time to the business. By the agreement Youngman was to receive one-fourth of the gross profits, with any remaining net gains then being divided equally among the three partners.

Youngman met his death in the course of his active participation in the business. The venture was still in its first year, and no profits had yet been distributed. Through a drawing account Youngman had been receiving about $300 a month, which would have been deducted from his share of the income had any profits been realized.

In these circumstances it cannot be said that Youngman was an employee of the partnership. It is of course true, as the Commission observed, that it is possible for a partner to deal with his own firm. A member of a mercantile partnership might, for example, purchase merchandise from the company, and title would pass from the firm to the partner. But this case involves no such special agreement. The partnership contract itself contemplated that Youngman would be the only active partner. His preferential one-fourth interest in the profits was not the result of a special contract of employment, by which Youngman relinquished his authority as a partner and assumed a subordinate role. Instead, his status as a worker in the field was simply an important part of the arrangement by which the three men did business together.

With the lone exception of Oklahoma, the authorities are unanimous in holding that a partner, even though he be the sole active member of the firm, is not an employee of the partnership for the purpose of workmen's compensation. Larson on Workmen's Compensation Law, § 54.30; 4 Ark. L. Rev. 498. In several states the rule has been changed by statute, and we think legislation to be the appropriate method for bringing partners within the scope of the compensation law. As Larson points out: "There are two serious obstacles to such an extension of coverage by judicial decision. The first is that a partnership is not, except for a few specific purposes, an entity separate from its members. Therefore, since the partnership is nothing more than the aggregate of the individuals making it up, a partner-employee would also be an employer. The compensation act cannot be supposed to have contemplated any such combination of employer and employee status in one person . . . Even if, however, this conceptual difficulty could be surmounted, there would remain a far more stubborn obstacle, which is the fact that in any ordinary partnership each partner has by law an equal share in management, and is therefore in actual possession of the powers of the employer. Unless he has contracted away those powers, which he can theoretically

do, he is as much the employer as anyone can be, not as a matter of conceptual reasoning but as a matter of actual functions and rights." *Op. cit.,* §§ 54.31 and 54.32.

Neither of these considerations was discussed by the Oklahoma court in arriving at its minority view. The case of *Ohio Drilling Co.* v. *State Industrial Com'n,* 86 Okla. 139, 207 P. 314, 25 A. L. R. 367, was one of the earliest American decisions on the question. There the court stressed the fact that the statutory definition of an employer included a partnership, and from this premise the court concluded that a partner might be an employee. A similar argument could be based upon our own definitions of employer and employees, Ark. Stats., 1947, § 81-1302; but its fallacy lies in the failure to take into account the statutory scheme as a whole. The Act contemplates that the employer is himself liable for the Commission's award. "The primary obligation to pay compensation is upon the employer and the procurement of a policy of insurance by an employer to cover the obligation in respect to this Act shall not relieve him of such obligation." Section 81-1305. For a person to be at once an employer and an employee would manifestly involve the contradiction of liability to himself.

Furthermore, we have repeatedly emphasized the matter of control as the most vital factor in the determination of the employer-employee relationship. Who, on behalf of the Brinkley partnership, controlled Youngman's activities in connection with this subcontract? Obviously no one did, except Youngman himself. Indeed, the partnership arrangement contemplated that when Youngman was at the scene of the work he should be vested with the complete authority of the firm. In this situation his status was the antithesis of that of an employee, as far as Brinkley is concerned.

With respect to the Tulsa Construction Company, a different conclusion must be reached. The original written contract between Tulsa and Brinkley required the subcontractor to receive the pipe at a railroad siding, haul it to the site of the work, and string it along the

ditch in which Tulsa was to complete the laying of the pipeline. It is shown that Tulsa's superintendent designated the place at which each load of pipe was to be deposited. Tulsa argues, however, that this assumption of control was merely incidental to the relation between a contractor and its subcontractor and therefore falls short of changing Youngman's status to that of a special employee of Tulsa. See *Erickson* v. *Kircher*, 168 Minn. 67, 209 N. W. 644; *Security Union Ins. Co.* v. *McLeod*, (Tex.) 36 S. W. 2d 449; *Gibson* v. *Industrial Com'n*, 81 Utah 580, 21 P. 2d 536.

The trouble with this argument is that the original contract was modified shortly before Youngman's death. In the early stages of the work unforeseen wet weather was encountered, making it very expensive for Brinkley to tow its trucks through the mud between the public highway and the ditch on the pipeline right-of-way. The project was proving to be so costly to Brinkley that the partners decided to abandon the work, even though this decision involved their forfeiting the ten percent of their compensation that Tulsa had been holding back each week, as permitted by the contract.

To prevent Brinkley from quitting the job Tulsa agreed that it would assume the responsibility and expense of towing the trucks from the highway to the ditch and of unloading the pipe at the site of the work. It was after this modification of the contract that Youngman was killed, at a time when he was assisting employees of both concerns in an effort to move a truckload of pipe that had bogged down in the mud.

We think the Commission's finding that Youngman was at the time of his death a special employee of Tulsa involves primarily an issue of fact. Tulsa's assumption of complete responsibility for this phase of the project carried with it the correlative power of control. There is ample evidence to support the Commission's conclusion that under the modified contract Tulsa alone had the right to control the operation after the loaded trucks left the highway. This being true, the Commission was

warranted in concluding that Youngman was subject to Tulsa's orders when the incident occurred that led to his death.

The award against Tulsa is affirmed; that against Brinkley is reversed.

SAM ROBINSON, J. (dissenting). Our Workmen's Compensation Law defines the terms "employer" and "employee." Ark. Stats., § 81-1302(a) provides: " 'Employer' means any individual, partnership, association, or corporation carrying on any employment, or the receiver or trustee of the same, or the legal representative of a deceased employer." Paragraph (b) provides: " 'Employee' means any person, including a minor, whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, written or oral, expressed or implied. . . ." In *Scobey, Adm., v. Southern Lumber Company,* 218 Ark. 671, 238 S. W. 2d 640, 243 S. W. 2d 754, we quoted from *Triebsch v. Athletic Mining & Smelting Co.,* 218 Ark. 379, 237 S. W. 2d 26, as follows: "We have many times held that the Workmen's Compensation Law should be broadly and liberally construed; and that doubtful cases should be resolved in favor of the claimant. *Hunter v. Summerville,* 205 Ark. 463, 169 S. W. 2d 579; *Elm Springs Canning Co. v. Sullins,* 207 Ark. 257, 180 S. W. 2d 113; *Nolen v. Wortz Biscuit Co.,* 210 Ark. 446, 196 S. W. 2d 899, and *Batesville White Lime Co. v. Bell,* 212 Ark. 23, 205 S. W. 2d 31."

Was Youngman an employee of the partnership within the meaning of the statute? The definition of an employee is broad: " 'Employee' means *any person* . . . in the service of an employer under any contract of hire . . . expressed or implied." The statute says *"any* person" and does not except a partner who is in the employment of the partnership. In my opinion the fact that Youngman owned an interest in the partnership did not preclude him from being an employee. He did the same hard manual labor as other employees of the firm, while the other partners did no similar work for the partnership. It is true that he also acted in the capacity of

foreman, but the Workmen's Compensation Law does not exempt a foreman from its benefits.

The majority, while conceding that it is possible for a partner to contract with the partnership, contend that in this instance there was no special agreement whereby Youngman could be said to be working for the partnership in the capacity of an employee. I do not agree. The partners contracted that for his work Youngman was to receive 25% of the gross profits of the business; he was to receive this amount for his work regardless of the fact that he, as a partner in the business, and the other partners might not receive one dime by reason of their investment in the partnership. It can hardly be said that this arrangement was not the result of a special agreement. In fact, Youngman had been receiving about $300 a month by drawing against the 25% of gross profits as compensation for his labor. He was to receive 25% of the gross profits in addition to the same amount that would be received by the other partners on the net income.

Most of the cases which hold that a partner is not entitled to compensation under Workmen's Compensation Laws are bottomed on the theory that one cannot recover against himself, and to allow a partner to recover against a partnership would in effect violate that principle. This might be a good theory under the common law, but it is not sound in connection with a modern Workmen's Compensation Law. The Workmen's Compensation Law is not based on the theory of negligence or non-negligence. In many instances an employee has the right to compensation under the compensation law where there would be no liability whatever on the part of the employer under the common law. Workmen's Compensation Laws are based on public policy and humanitarian purposes, and not on the theory of liability or non-liability under the common law. "The liability is based not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment, because and in the course of which he has been injured." *McGregor & Pickett* v. *Arrington*, 206 Ark. 921, 175 S. W. 2d 210.

In the very recent case of *Glassco* v. *Glassco*, 195 Va. 239, 77 S. E. 2d 843, decided by the Supreme Court of Virginia on October 12, 1953, it was held that even though it is a settled doctrine in that state that a wife cannot maintain a tort action against her husband, she is entitled to compensation for the death of her son while he was an employee of the husband and father. ''This contention (of non-liability under the compensation law) is based on a misconception of the right to, and liability for, compensation benefits under the Act. A proceeding under the Act is not one to recover damage for a wrong, for the employer's liability is not based upon tort. *Burlington Mills Corp.* v. *Hagood,* 177 Va. 204, 13 S. E. 2d 291; *Fauver* v. *Bell,* 192 Va. 518, 65 S. E. 2d 575. It is a proceeding to enforce a liability imposed by statute for an injury received by, or death of, an employee in the course of and arising out of his employment. As to an employer coming within its terms the Act imposes a legal obligation to compensate financially the injured employee for such an injury, or the employee's dependents, in case of death. Thus, the statute reads into every contract of employment within the purview of the Act the obligation of the employer to pay, and the right of the employee or his dependents to recover, such benefits.'' Then the Court points out the definitions of ''employer'' and ''employee'' as set out in the Act, which definitions are substantially the same as those in our statute, and mentions the fact that no exception is made because of family relationship between employer and employee; likewise in the case at bar our statute makes no exception as to a partner.

The majority in the case at bar refuses to follow the Oklahoma case of *Ohio Drilling Co.* v. *State Industrial Commission,* 86 Okla. 139; 207 Pac. 314, 25 A. L. R. 367; that case holds that in circumstances similar to the facts in the case at bar a partner is entitled to compensation. The law announced in that case is sound; and to give effect to our announced policy of construing the Workmen's Compensation Act in favor of the claimant, the Oklahoma case should be followed in this state.

For the reason set out herein, I respectfully dissent from that part of the opinion which reverses the cause as to Brinkley.

Justices McFADDIN and MILLWEE join in this dissent.