MARINE, WIDOW AND ADMINISTRATRIX *v.* SERVICE TRUCKING COMPANY, INC. ET AL.

[No. 268, September Term, 1960.]

*Decided May 9, 1961.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*William W. Travers* and *Walter C. Anderson,* with whom were *Webb & Travers* and *Vaughn E. Richardson* on the brief, for appellant.

*John S. Hebb, III,* with whom was *Robert L. Karwacki* on the brief, for appellees.

PRESCOTT, J., delivered the opinion of the Court.

Disappointed and feeling aggrieved by the action of the Circuit Court for Dorchester County, which sustained an order of the Workmen's Compensation Commission (Commission), denying their claim for compensation, a widow and four minor children have appealed.

The sole question presented for decision is whether Floyd K. Marine, the husband and father, was an employee of Service Trucking Company, Inc. (Service), at the time of his death.

Service operates a fleet of trucks for the hauling of general cargo over a large area of the country. Its principal office is located at Federalsburg, Maryland. Marine was the proprietor of a trucking business operated by him in Galestown, Maryland. His operating equipment consisted of three tractors and one trailer, which were operated by Marine and the drivers whom he employed. Since Marine had no I.C.C. certificate of public convenience and necessity, he was unable to use his trucks in interstate commerce. Apparently, to surmount this difficulty, he leased his equipment to certificated carriers, such as Indiana Refrigeration Line, Inc., Federal

Trucking Company and Service. Under such an arrangement, Service and Marine, on November 6, 1958, entered into a lease agreement, whereby Service leased from Marine the tractor and trailer in which he was riding at the time of his death.

During early January of 1959, Service obtained a contract for hauling a truck load of products from the factory of Swanson & Co., at Salisbury, Maryland, to a point in the State of Florida. Marine was engaged to perform Service's contract of hauling with Swanson, and, having no helper at the time, he contacted and employed one Jeraloman, who had been employed by him many times before, to make this trip. The two left Salisbury on January 6, 1959, and started to their destination in the truck described in the lease. When they reached a point in Virginia, the operator of the truck accidentally ran into the rear of a parked vehicle, and both Marine and his helper died as a result thereof.

The appellants filed a claim with the Commission for Workmen's Compensation, which was denied on the ground that Marine, at the time of his death, was not an employee of Service. An appeal was taken to the Circuit Court for Dorchester County, where the decision of the Commission was affirmed, and the appeal to this Court followed.

Additional facts and more of the terms of the lease will be stated later in the opinion.

The appellants, rightfully, concede that if Marine were an independent contractor at the time of his death, they are not entitled to an award. Code (1957), Article 101, Section 67 (3); *Board of Sup'rs Elections v. Balser,* 172 Md. 187, 190 A. 822; *Sun Cab Co. v. Powell,* 196 Md. 572, 77 A. 2d 783; *Snider v. Gaultney,* 218 Md. 332, 146 A. 2d 869. This Court stated in *Gaultney, supra,* that an independent contractor is, "one who contracts to perform a certain work for another according to his own means and methods, free from the control of his employer in all details connected with the performance of the work except as to its product or result." And, as the words "employer" and "employee" in the Workmen's Compensation Act, are the equivalent of, and synonymous

with, the words "master" and "servant," the rules for determining the existence of the relation of employer and employee under the Act are the same as the common-law rules for ascertaining the relation of master and servant. *Sun Cab Co. v. Powell, supra; L. & S. Construction Co. v. State Accident Fund,* 221 Md. 51, 155 A. 2d 653, and cases therein cited. Whether the relationship of the parties is that of master and servant, or employer and independent contractor, depends upon the facts of each particular case, *Greer Lines Co. v. Roberts,* 216 Md. 69, 80, 139 A. 2d 235; and where the evidence is conflicting upon the subject, *or* more than one inference can be drawn from the evidence, the question is one for the trier of facts to determine. *Greer Lines Co. v. Roberts, supra; L. & S. Construction Co. v. State Accident Fund, supra.*

In a number of cases, the Court has enumerated several *criteria* that may be considered in determining whether a master-servant relationship exists. *Sun Cab Co. v. Powell, supra; Charles Freeland & Sons, Inc. v. Couplin,* 211 Md. 160, 169, 126 A. 2d 606; *Keitz v. National Paving Co.,* 214 Md. 479, 491, 134 A. 2d 296; *L. & S. Construction Co. v. State Accident Fund, supra.* None of these *indicia,* standing alone, is controlling except one. In *Keitz,* 214 Md. at page 491, we said: "The decisive test in determining whether the relation of master and servant exists is whether the employer has the *right to control and direct the servant in the performance of his work and in the manner in which the work is to be done.* It * * * is not the manner in which the alleged master actually exercised his authority to control and direct the action of the servant which controls, but it is his *right* to do so that is important." See also *L. & S. Construction Co. v. State Accident Fund, supra.*

Although few, if any, of the facts herein are in dispute, we think the rational inferences that may be drawn from the terms of the lease agreement and the other evidence render the question of the relationship of the parties one of fact, not one of law.

We proceed directly to the main thrust of the appellant's

argument, which, after quite frankly admitting that, "the leasing agreement contains many provisions which are indicative of an independent contractor relationship," they base upon Section 3 of the leasing agreement. It follows:

> "Lessee shall have dominion, supervision, and control of the equipment during said lease, and assumes all liability to the shipper, the consignee, and the public, and responsibility to the Interstate Commerce Commission and all State regulatory bodies for compliance with its rules and regulations, and shall insure the leased vehicle for public liability, both bodily injury and property damage, and provide cargo insurance."

From the above, they argue that as the lessee had the "dominion, supervision, and control of the equipment," it necessarily had the right to control and direct Marine in the performance of his work and the manner in which the work was done, which clearly created an employer-employee relationship. However, the appellants, again quite candidly, acknowledge the weakness of their position by pointing out that, "there is an apparent attempt in the [lease] agreement to give [Marine] freedom of action over the method in which he would perform the task," and, "it is true the individual is not mentioned [in section 3] as the one over whom control may be exercised * * *." When these facts are considered with the further fact that section 3 (as well as certain other provisions in the lease) is little more than an obvious compliance with the Interstate Commerce Commission Regulations [1] relating to the transportation of authorized carriers with equipment not owned by them, the appellants' argument loses much of its force, and the trial court's finding that, "the parties intended to create the relationship of independent contractor" is shown to be supported by the evidence. Neither this provision of the lease, nor any other, gave Service the *right* to control and direct Marine in the performance of his

---

1. Code of Federal Regulations (1949 Ed., 1960 Cum. Pocket Supp.) Title 49, "Transportation," Section 207.4 (a) (4).

work and in the manner in which his work was to be done.

We do not deem it necessary to prolong, unduly, this opinion by discussing, individually, each of the *indicia* of the master-servant relation that we referred to in the cases cited, as they relate to the facts involved herein. The trial court, in his opinion, considered certain facts, all amply supported by the evidence. He considered that Marine owned the tractor and trailer being driven at the time of his death, giving him an investment in the operation greater than an ordinary employee; that the lease agreement had the formal appearance of an agreement with an independent contractor; that Marine was free to employ his own relief driver and did so; that Marine was responsible for loading and unloading the trailer, and supplying any additional help that he required; that, when pulling a trailer belonging to Service, he was responsible for the trailer, and he could refuse to pull any trailer not complying with safety regulations; that Marine was required to supply tires for Service's trailers that he might pull, and to carry insurance on the trailers; that he was required to paint his tractor a color designated by Service; that Marine was required to furnish oil and gas used in the operation of the mechanical units on Service's trailers; that Marine was to receive 75% of the entire revenue, out of which he was required to pay all taxes and operating and maintenance expenses; that Service took no interest in Marine's operation other than the time of departure and arrival, and to see that he complied with I. C. C. regulations; that Marine employed his own drivers, made up his own payroll and reported it for withholding purposes, carried compensation insurance on his own employees, and his Maryland income tax return stated that he was self-employed; that Marine had a gross income of some $36,000 for the year 1958; and inferred from these facts that Marine, at the time of his decease, was an independent contractor, and not an employee of Service. To reverse this finding, it would be necessary to say that the trial court was clearly erroneous. Maryland Rule 886. This, we cannot do.

*Judgment affirmed, with costs.*