497 A.2d 803

**Sidney J. WHITEHEAD, et al.**

v.

**SAFWAY STEEL PRODUCTS, INC.**

**No. 82, Sept. Term, 1984.**

Court of Appeals of Maryland.

Sept. 17, 1985.

Joseph L. Johnson and Dennis F. O'Brien, Towson (White, Mindel, Clarke & Hill, Towson, on brief), for appellant.

Alva P. Weaver, III, Baltimore (Lord, Whip, Coughlan & Green, P.A., Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

COUCH, Judge.

In this appeal we consider whether a person who is employed by a temporary services agency is also an employee of the company to which the worker is provisionally assigned. Preliminarily, however, we must decide whether the existence of an employment relationship was properly treated by the trial court as a legal, rather than factual, issue. We conclude that the question of relation was a matter of law for the trial court to decide, and affirm that court's determination that the worker was an employee of the utilizing company.

## I

The facts of this case are undisputed and may be summarized as follows:

Bay Services, Inc. (Bay), is a temporary help agency in the business of supplying unskilled labor to various industrial customers. When a client requests a Bay worker, Bay selects an employee from among its available labor pool and assigns the worker to the job. The client is then free to utilize and direct the employee as the particular situation demands.

The client records the number of hours worked by the employee and is billed accordingly. Bay pays the worker a designated wage and maintains workmen's compensation insurance to cover any unforeseen mishaps. Bay also pays unemployment insurance assessments for its employees.

All temporary workers are interviewed and hired by Bay. Bay reserves the right to fire the employee if performance on the assigned job is unsatisfactory.

On February 18, 1981, Safway Steel Products, Inc. (Safway), contacted Bay and requested two temporary help workers. Bay selected Whitehead and another worker and assigned them to the job. The men reported to Safway and were directed by it to perform several menial tasks. The first day passed without incident.

The men returned to Safway the next day and resumed their duties. Whitehead was given the task of loading steel scaffolding onto a trailer. While Whitehead was thus engaged, a bundle of scaffolding fell on him and caused serious injury.

Whitehead filed for, and received, workmen's compensation benefits through Bay for his injury. He also instituted a negligence suit against Safway for the same occurrence. A jury trial was elected and trial commenced.

At the close of plaintiff's case, Safway moved for a directed verdict, claiming that Whitehead was its employee and that his exclusive remedy was under the workmen's compensation laws. The court (Bothe, J.) denied the motion and the case was submitted to the jury without the defense presenting evidence. After deliberation, the jury determined that Whitehead was not an employee of Safway and that the latter was negligent in the operation of its plant. The panel awarded damages to Whitehead.

Safway's subsequent motion for judgment n.o.v. was granted by the trial court. According to Judge Bothe, the uncontradicted evidence demonstrated that Safway controlled Whitehead's work. This meant that Whitehead was an employee of Safway and that his only remedy for the occupational injury was through the workmen's compensation laws. Whitehead's negligence action was thereby dismissed.

Whitehead appealed to the Court of Special Appeals. Prior to consideration by that court, we granted certiorari

on our own motion to resolve these issues of public importance.

## II

We must first consider whether the existence of an employer/employee relationship between Safway and Whitehead was properly treated as a legal matter, capable of resolution by judgment n.o.v. Armed with authority, the parties present two competing views on this question.

Safway contends, as it successfully did below, that when the evidence in a labor case is undisputed, the question of relation between the parties becomes one of law for the court to decide. In Safway's opinion, it is only where (1) the evidence is disputed, *and* (2) different inferences can be drawn from the evidence, that the existence of an employer/employee relationship should be determined by the factfinder. Safway argues that, in the instant case, all of the facts were presented by Whitehead, and the defense rested without calling a witness; thus all remaining issues concerning the employment relationship were legal matters properly resolved by judgment n.o.v. As authority for this proposition, Safway cites *Tavel v. Bechtel Corporation,* 242 Md. 299, 303, 219 A.2d 43, 45 (1966), where it was stated:

"[w]here the terms and manner of employment are disputed *and* different inferences may be drawn therefrom, the issue is a mixed question of law and fact, to be determined by the trier of the facts, under proper instructions, *but where the essential terms and manner of employment are undisputed, the question is one of law for the court."* (emphasis supplied)

Whitehead admits that the evidence is uncontested. Contrary to the approach espoused by Safway, however, Whitehead asserts that a jury must determine the question of relation whenever (1) the evidence is disputed, *or* (2) differing inferences can be drawn from the facts adduced at trial. Taking this argument to its logical conclusion, a factfinder would decide the employment relation any time the parties

disagreed as to the inferences which could be made from the presented evidence. Whitehead reasons further that the fact that the jury decided against Safway proves that differing inferences from the submitted evidence were possible. Precedent for Whitehead's position is derived from *L. & S. Construction Co. v. State Accident Fund*, 221 Md. 51, 59, 155 A.2d 653, 657–58 (1959), where we said

> "on appeal from the Workmen's Compensation Commission ... where the facts or inferences therefrom, or both, are in dispute, such questions [e.g., relation of parties] are to be determined by the jury."

### A.

In order to resolve this apparent conflict between the two cases cited by the parties, and ascertain the precise role of the judge and jury in deciding employment issues, we examine initially our past decisions in this area.

In our first consideration of the proper role of judge and jury in employment cases, we admitted that the greatest difficulty in these cases is in determining, upon the facts, who is to be regarded as the master of a particular worker. *Deford v. State, Use of Keyser*, 30 Md. 179, 203 (1869). To leave trial courts with some guidance, we stated as a general rule that a jury should determine, as matters of fact, terms and manner of employment; "it being for the court to declare the legal relation that existed between the parties, *upon any given state of facts*." (emphasis supplied) *Id.* at 204.

Several decades later, in *Sacker v. Waddell*, 98 Md. 43, 56 A. 399 (1903), we again acknowledged that whether a worker was acting as a servant "frequently depends upon such a variety of facts that it falls outside of any definite rule and for that reason becomes, under proper instructions, a question of fact for the jury." *Id.* at 52, 56 A. at 401. Where the facts make it doubtful that the relation of master/servant existed on a particular occasion, a jury should determine the question. *Id.* However, upon any given state of facts,

or upon clear facts, the legal relation that existed between the parties must be decided by the court. *Id.*

Later cases of the Court further clarified the occasions when a jury, or a court, should decide employment issues. A court, we said, should not determine whether an incident arose out of and in the course of employment if there is a need to decide between opposing witnesses. *Jewel Tea Co. v. Weber*, 132 Md. 178, 182, 103 A. 476, 477 (1918). We also stated "no action of the Court should control the exercise of their [the jury's] admitted right to weigh the credibility of evidence." *Id.*, quoting *Western Md. R. Co. v. Kehoe*, 86 Md. 43, 54, 37 A. 799, 801 (1897). Furthermore, situations could exist where uncontradicted evidence in a labor case arguably yields differing inferences so as to require jury determination of substantive issues, *see Todd v. Easton Furniture Co.*, 147 Md. 352, 356, 128 A. 42, 43–44 (1925) (uncontradicted evidence may have permitted jury to determine injury occurred during course of employment, contrary to trial court's legal conclusion).

■ Nevertheless, we continued to authorize courts to decide ordinarily factual matters as legal issues where the evidence on the point was undisputed. This principle was first utilized in *Harrison v. Central Con. Co.*, 135 Md. 170, 108 A. 874 (1919), where we determined that a certain injury to a laborer occurred, as a matter of law, in the course of his employment. The determination of this particular issue had been accomplished previously by factfinders. *See Jewel Tea, supra,* 132 Md. at 182, 103 A. at 477. We justified this conclusion as follows:

"[t]he question as to whether the injury occurred out of or in the course of employment is ordinarily, like negligence or want of probable cause, a mixed question of law and fact; *but when the facts have been ascertained and agreed upon by the parties, or are undisputed and there is no dispute as to the inferences to be drawn from the facts, the question becomes one of law and may be decided by the Court.*" (emphasis supplied)

135 Md. at 180, 108 A. at 878. Subsequent decisions of the Court adhered to this rule. *See, e.g., Bogatsky v. Swerdlin,* 152 Md. 18, 22, 135 A. 416, 418 (1926), citing *Todd, supra* ("if the facts are conceded or undisputed, there is no issue of fact to be submitted to the jury"); *Barnes v. Myers,* 163 Md. 206, 208–09, 161 A. 279, 280 (1932) (as a matter of law, on admitted evidence, worker was an independent contractor and not an employee); *Beyer v. Decker,* 159 Md. 289, 291, 150 A. 804, 805 (1930) (as matter of law, on undisputed facts, employee not within coverage of Workmen's Compensation Act). *Accord, Baltimore Trans. Co. v. State,* 184 Md. 250, 265, 40 A.2d 678, 685 (1945) (whether or not the circumstances of a given case are legally sufficient to overcome the presumption that an employee lent to another with a vehicle continues to be the servant of his master is ordinarily a question for the jury, "but where the rebutting testimony is uncontradicted it becomes one for the court to determine as a matter of law").

Against this lengthy historical background emerged the language in *Tavel* (question of law where facts undisputed) and *L. & S. Construction* (question of law where facts or inferences undisputed). The two standards have appeared interchangeably in opinions other than those already cited, including, for the *Tavel* standard, *Thompson v. Paul C. Thompson & Sons,* 258 Md. 391, 394–95, 265 A.2d 915, 917 (1970); *Lupton v. McDonald,* 241 Md. 446, 450, 217 A.2d 262, 264 (1966); *Clayburn v. Soueid,* 239 Md. 331, 337, 211 A.2d 728, 731 (1965); *Sun Cab Co. v. Powell,* 196 Md. 572, 582, 77 A.2d 783, 787 (1951); *Williams Construction Co. v. Bohlen,* 189 Md. 576, 579–80, 56 A.2d 694, 695 (1948). The test espoused in *L. & S. Construction* appears in *Marine v. Service Trucking Co.,* 225 Md. 315, 319, 170 A.2d 188, 190 (1961); *Greer Lines Co. v. Roberts,* 216 Md. 69, 80, 139 A.2d 235, 240 (1958); *Globe Indemnity Co. v. Victill Corp.,* 208 Md. 573, 585, 119 A.2d 423, 429 (1956).

The most recent pronouncement which defines legal and factual issues is found in *Mackall v. Zayre Corp.,* 293 Md. 221, 443 A.2d 98 (1982). In the case, we state:

"[i]f there is evidence to support an inference that more than one individual or company controls or directs a person in the performance of a given function, the question whether an employer-employee relationship exists is a question of fact to be determined by a jury."

*Id.* at 230, 443 A.2d at 103.

## B.

■ With the historical review behind us, we now turn to the proper rule for distinguishing questions of law from matters of fact in the employment field. First, the decisions of this Court make clear that whenever evidence in a labor case is disputed, *and* differing inferences from the evidence are possible, a jury must determine the underlying employment issues. Both of the cases which the parties cite for our perusal support this point. *See Tavel, supra,* 242 Md. at 303, 219 A.2d at 45; *L. & S. Construction,* 221 Md. at 59, 155 A.2d at 657–58.

■ Second, where the evidence on an issue is uncontradicted, ordinarily a court may decide the issue as one of law. *Tavel, supra,* and cases cited therein; *Bogatsky, supra,* 152 Md. at 22, 135 A.2d at 418; *Deford, supra,* 30 Md. at 204. While the trial court should take some pains to ensure that conflicting inferences are not possible on the presented evidence, *see Todd, supra,* 147 Md. at 356, 128 A.2d at 43–44, something more than conjecture of a party is necessary to establish that "conflicting inferences" are possible in a given case. At the very least, a party must point to *evidence* in the case that control of a given function is vested in more than one person. *Mackall, supra,* 293 Md. at 230, 443 A.2d at 103.

■ In the present case, Whitehead concedes that all control of specific tasks while he was at Safway belonged entirely to Safway. This significant fact rendered the employment issue proper for judgment n.o.v., and renders his unsupported claim of "conflicting inferences" a nullity.

The apparent conflict between the language employed in the *Tavel* and *L. & S. Construction* line of cases similarly fails to provide any support for Whitehead's position recited earlier in this opinion. The frequency with which the two tests have been interchangeably used, and the long-standing policy of this Court to reserve for the trial court the determination of employment issues in undisputed cases, convinces us that the two lines of cases were merely slightly divergent roads to the same Mecca.

The decisions reached in the *L. & S. Construction* line of cases proves this last point. Under Whitehead's reading of the case, a factfinder would always decide employment issues since, as between the parties, the inferences possible in a case are invariably contested (otherwise, trial would not be necessary to resolve the dispute.) Nevertheless, when this Court has employed the *L. & S. Construction test*, we have not hesitated to rule, as a matter of law, upon the employment issue. *See, e.g., Globe Indemnity, supra* (employer-employee relationship); *Greer Lines Co., supra* (employer-employee relationship).

It follows that Judge Bothe properly treated the question of relation as a matter of law.

### III

#### A.

It remains to be determined whether Judge Bothe correctly decided that as a legal matter, Whitehead was an employee of Safway. This Court has traditionally considered five criteria in determining whether or not an employer/employee relationship exists between two parties. These criteria, developed from the common law standard for determining the master/servant relationship, *see Sun Cab, supra,* 196 Md. at 577, 77 A.2d at 784–85, include (1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular

business of the employer, *Mackall v. Zayre Corp., supra,* 293 Md. at 230, 443 A.2d at 103.

■ Of the five factors, the factor of control stands out as the most important. We have said, for example, that whether the employer "has the right to control and direct the employee in the performance of the work and in the manner in which the work is to be done" is the "decisive," *Mackall, supra,* 293 Md. at 230, 443 A.2d at 103, or "controlling" test, *L. & S. Construction, supra,* 221 Md. at 57, 155 A.2d at 656; *Keitz v. National Paving Co.,* 214 Md. 479, 491, 134 A.2d 296, 301 (1957). We have also recognized, in speaking to the interrelationship of the factors, that *"standing alone,* none of these indicia, *excepting (4)* [the factor of control], seems controlling in the determination as to whether such a relationship exists." (emphasis supplied). *Keitz, supra,* 214 Md. at 491, 134 A.2d at 301; *L. & S. Construction, supra,* 221 Md. at 57, 155 A.2d at 656. Thus, for our purposes, "decisive," besides "controlling," means "conclusive," "determinative," and "definitive." Webster's New Collegiage Dictionary (Copyright 1974). This view is consistent with that expressed in other jurisdictions, where control has been variously described as "the most vital factor," *Brinkley Heavy Hauling Co. v. Youngman,* 223 Ark. 74, 264 S.W.2d 409, 411 (1954), "the most important factor," *Crepps v. Industrial Commission,* 402 Ill. 606, 614, 85 N.E.2d 5, 9 (1949), "the most significant factor in all cases," *Carlson v. Industrial Commission,* 213 Cal. 287, 2 P.2d 151, 153 (1931), *cert. denied,* 284 U.S. 681, 52 S.Ct. 199, 76 L.Ed. 575 (1932), "the most stressed element," *Piantanida v. Bennett,* 17 N.J. 291, 111 A.2d 412, 414 (1955), "the final test," *Hinds v. Dept. of Labor & Industries of State of Washington,* 150 Wash. 230, 272 P. 734, 735 (1928), and "the crucial test," *Jay Lines, Inc. v. Workmen's Compensation Appeal Board,* 66 Pa.Comwlth 299, 443 A.2d 1370, 1372 (1982), when determining whether the employer/employee relationship exists.

■ We believe that the control exercised by Safway over Whitehead clearly establishes an employer/employee relationship. Safway instructed Whitehead on the task to be performed, supervised his work, and was free to reassign him to any other duties that warranted attention. If Whitehead's work was unsatisfactory, Safway was free to dismiss him and request an additional worker.

Moreover, the amount Safway was billed by Bay for its use of the temporary worker was greater than what Bay paid Whitehead. This extra cost doubtlessly helped cover, besides Bay's profit margin, such expenses as Bay's payment of Whitehead's unemployment and workmen's compensation insurance. In other words, Safway actually contributed to the insurance protection of one of its employees.

■ Of course, the fact that Whitehead was admittedly the employee of Bay at the precise time he worked for Safway does not alter this conclusion. A worker may simultaneously be the employee of two employers. *Mackall, supra*, 293 Md. at 229, 443 A.2d at 102.

While this Court has not previously determined that temporary services workers are employees of the company to which they are sent, other jurisdictions have considered the issue. They are generally in accord with our holding that temporaries such as Whitehead, who work in employment circumstances similar to the one here present, are as a matter of law, employees of the customer. *See, e.g., Simmons v. Atlas Vac Machine Co.*, 493 F.Supp. 1082 (E.D. Wisc.1980) (temporary worker may not sue employer to which he is assigned for negligence because of employer-employee relationship); *Rumsey v. Eastern Distribution, Inc.*, 445 So.2d 1085 (Fla.App.1984) (temporary services worker injured while on assignment to Eastern not entitled to sue appellee in tort; Rumsey was an employee of Eastern and his exclusive remedy was under the workmen's compensation laws); *Hoffman v. National Machine Co.*, 113 Mich.App. 66, 317 N.W.2d 289 (1982) (employee of labor broker also an employee of company to which he is tempo-

rarily sent; tort suit prohibited due to employment relationship and existence of workmen's compensation legislation); *Fox v. Contract Beverage Packers, Inc.*, 398 N.E.2d 709 (Ind.App.1980) (employer of Manpower temporary worker immune from negligence suit because of employer-employee relationship and workmen's compensation laws); *Danek v. Meldrum Mfg. & Engineering Co.*, 312 Minn. 404, 252 N.W.2d 255 (1977) (Labor Pool employee also an employee of Labor Pool customer; workmen's compensation provides sole remedy for injured worker); *English v. Lehigh County Authority*, 286 Pa.Super. 312, 428 A.2d 1343 (1981) (employer-employee relationship existed between Kelly Labor Services employee and company to which worker is assigned). *See generally,* 1C Larson, *Workmen's Compensation Law* (1982 Ed.), § 48.23.[1]

---

1. Larson identifies several cases where the customer of a labor broker was held *not* liable for workmen's compensation benefits. See *Id.* at notes 65.1, 66.1. These cases did not involve the issue *sub curia* (whether a worker is an employee of the customer), and are hence easily distinguishable. For example, in *Smith v. Kelly Labor Services,* 239 So.2d 685 (La.App.1970), the court held that the customer did not have to contribute to a workmen's compensation award given to an employee injured on the customer's premises. The court had no difficulty concluding that the customer was a special employer and Kelly a general employer. *Id.* at 688. Nevertheless, the customer did not have to contribute to the award since Kelly had contracted to hold the customer harmless in the event of injury to the worker. *Id.*

   In *Williams v. Atlantic & Gulf Stevedores, Inc.,* 236 So.2d 524 (La.App.1970), the sole issue before the court was whether the labor broker was an employer of a worker injured at the site owned by the customer. It was conceded that the worker was an employee of the customer. *Id.* at 526. The court ruled that Williams was an employee of Atlantic, the general employer. *Id.* at 528.

   The court in *Levinson v. Payson,* 73 Mich.App. 655, 252 N.W.2d 567 (1977) was unable to conclude whether, as a matter of law, the temporary services customer was an "employer under the [state] Workers' Disability Compensation Act." 252 N.W.2d at 568. The court readily agreed that the customer, Payson, was an "employer." *Id.* The case was remanded, however, for the lower court to determine whether the additional express statutory requirements under the State Act were met. *Id.* at 568–69.

   Similarly, in *White v. Extra Labor Power of America,* 54 Mich.App. 370, 221 N.W.2d 214 (1974), the court pronounced it "beyond dispute" that an injured worker was an employee of both the temporary

Whitehead suggests that the control exercised by Safway is no greater than the control displayed by the alleged employer in *L. & S. Construction, supra.* In that case, a tractor and an operator for the tractor were sent by the L. & S. Construction Company to the Weygant Engineering and Construction Company (Weygant) to temporarily assist the latter in an earth moving assignment. Weygant informed the operator as to which tasks needed his attention and had the right to remove him from the job at any time. 221 Md. at 55–56, 155 A.2d at 655.

We ruled that on this evidence, we could not agree with L. & S. that, as a matter of law, the worker was an employee of Weygant. *Id.* at 60, 155 A.2d at 658. We explained in our holding that "control over details as to what work is to be done and the way in which it is to be done . . . , will not of itself cause the employee to become the servant of the person to whom he is sent." *Id.* at 59, 155 A.2d at 657.

Whitehead utilizes this language to argue that Safway's simple control over the details of his work does not establish that, as a matter of law, he was "controlled" by Safway so as to make him the employee of Safway. This reasoning is flawed for several reasons.

First, control over the details of work which was insufficient to prove an employer-employee relationship in *L. & S. Construction* is far different than the amount of control exercised by Safway. Weygant was only concerned with moving dirt and packing it to form a road. Weygant could only point to what was to be done; it had no right to order the employee to change his manner of operation or remove the tractor from the job. *Id.* at 60–61, 155 A.2d at 658.

In the instant case, Safway had the right to instruct Whitehead on the tasks to be performed, had the power to

services agency and the company to which the worker was provisionally sent. 221 N.W.2d at 216. The latter did not have to pay state workers' compensation, however, since only Extra Labor paid the worker's wages. *Id.* at 216–17.

reassign him to a different job within the plant, and supervised and directed his actions and rate of work. Safway could have discharged the employee from its premises if Whitehead's work was unsatisfactory. The control over Whitehead by Safway was thus far greater than what was present in *L. & S. Construction.*

■ Second, as we recognized in *Keitz v. National Paving Co., supra,* in cases where a servant is lent to another with the personal property of the original master, there is a presumption that the employee remains the servant of his general employer. 214 Md. at 490–91, 134 A.2d at 301. No such presumption exists in the temporary services cases, where the worker is assigned and directed to perform any number of unspecified tasks for his special employer.

■ Additionally, as we acknowledged in *L. & S. Construction,* the power to hire or discharge a worker can be vested in one person and the power of control in another, and that in such a case the person having the power of control is the master. *Id.* at 56, 155 A.2d at 656. Such is the case at hand: Bay had the actual authority to hire and fire Whitehead, but Safway retained the power to control Whitehead while he was in its employ.

■ Finally, as we recognized in *Mackall, supra,* the correct test for determining questions of law is whether there is conflicting inferences, from the evidence, on the issue of control "in the performance of a given function." 293 Md. at 230, 443 A.2d at 103. There is no dispute, in the given case, as to this decisive element. Insofar as the language quoted in *L. & S. Construction* conflicts with this precept, the earlier case is overruled.

### B.

■ An analysis that is perhaps more helpful than the traditional common law test in identifying the relationship that existed between Safway and Whitehead is provided by the "lent employee" or "dual employment" doctrine. *See Thompson, supra,* 258 Md. at 395, 265 A.2d at 918. The

doctrine, which specifically envisions situations identical to the one at bar, is set forth in 1C Larson, *supra*, § 48.00, and consists of a three-prong test:

"When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if

(a) the employee has made a contract of hire, express or implied, with the special employer;

(b) the work being done is essentially that of the special employer; and

(c) the special employer has the right to control the details of the work.

When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation."

*William J. Burns Int'l v. Ferris*, 16 Md.App. 568, 578–79, 299 A.2d 487, 492–93 (1973). Cf. *Thompson, supra*, 258 Md. at 395, 265 A.2d at 918.[2] This analysis has proven particularly helpful in jurisdictions other than our own which have considered whether an employee of a labor broker is also an employee of the customer. *See, e.g., Eaddy v. A.J. Metler Hauling & Rigging Co.*, 325 S.E.2d 581, 582–83 (S.C.App.1985); *Rumsey v. Eastern Distribution, supra*, 445 So.2d at 1086; *Danek v. Meldrum Manufacturing & Engineering, supra*, 312 Minn. at 408–09, 252 N.W.2d at 258–59.

Applying the lent employee test to the facts of this case, we again conclude that Whitehead was an employee of Safway. Part (a) of the test, whether an express or implied contract of hire existed between the parties, is satisfied if the employee consents to the special employment relation-

---

**2.** The *Thompson* Court, despite its reliance on 1A Larson, Workmen's Compensation, inadvertently described the test for lent employees as "the consent of the employee, which may be expressed or implied; the right to control and direct the worker; *and the responsibility for the payment of wages, which must be considered but is not necessarily determinative.*" (emphasis supplied) *Id.* at 395, 265 A.2d at 918. By this opinion, we hereby correct the oversight.

ship. *Thompson, supra,* 258 Md. at 395, 265 A.2d at 918; *Rumsey, supra,* 445 So.2d at 1086; *Danek, supra,* 312 Minn. at 408–09, 252 N.W.2d at 259. *See generally,* Larson, *supra,* § 48.10. The element of consent is especially critical in workmen's compensation cases because of the relinquishment, by the employee, of his right to sue his special employer in tort. Larson, *supra,* at § 48.10. Of course, in exchange for the right to sue, the employee gains all of the traditional benefits associated with coverage under the workmen's compensation laws. *See generally, Stanley v. Western Maryland Ry. Co.,* 301 Md. 204, 207–08, 482 A.2d 881, 882–83 (1984).

There can be little doubt in the instant case that Whitehead consented to work for Safway. The contract between Whitehead and Bay specifically informed the worker that he would be assigned to client locations. Before accepting assignment, Whitehead was apprised of the customer's name and address and the nature of the work. Whitehead could decline assignment, if he chose, without fear of reprisal. Whitehead voluntarily reported, on two separate occasions, to the Safway plant, and submitted to the special employer's direction and control. All of these factors satisfy element (a). *See Danek, supra,* 312 Minn. at 308–09, 252 N.W.2d at 259–60, and cases cited therein.

Elements (b) and (c) are satisfied and need not be discussed at any length. Element (b) is met because the tasks performed by Whitehead at Safway were exclusively that of the special employer. Element (c), control over the details of work, was conceded from the outset by Whitehead.

Since all of the conditions of the test are satisfied, the determination of the trial court has again proven correct.

## IV

Whitehead lastly directs us to the interrogatories sent to Safway which ordered the company to furnish the names of all employees. In its answers, Safway did not include Whitehead. Whitehead maintains that this oversight dem-

onstrates Safway's subjective belief that he was not the company's employee, and must lead to an appropriate ruling by this Court.

The parties' subjective belief as to whether an employment relationship exists is not dispositive of the legal question of whether one is the employer of another, "except as such belief indicates an assumption of control by the one and submission to control by the other." *Sun Cab, supra,* 196 Md. at 580, 77 A.2d at 786. Here, the inescapable conclusion is that Whitehead voluntarily submitted to Safway's control.

For these reasons we conclude that the judgment of the lower court should be

AFFIRMED

COSTS TO BE PAID BY APPELLANT.

ELDRIDGE, Judge, dissenting.

I disagree with the Court's determination that, as a matter of law, "a person who is employed by a temporary services agency is also an employee of the company to which he is provisionally assigned." Although some other jurisdictions might be "generally in accord" with the majority's view,[1] I am nonetheless convinced that Maryland law and the facts of this case require a different conclusion.

(1)

Preliminarily, I question the majority's discussion of two "lines of cases" dealing with whether the determination of the employer-employee relationship is a legal or factual one. The Court has not previously perceived any divergence in Maryland case law regarding the test to be applied in deciding whether an issue is a legal or factual one, and I

---

1. *But see* 1C Larson, Workmen's Compensation Law (1982), § 48.23, pp. 369–373 and cases there cited ("there is substantial *contra* authority"). *See, e.g., Hill v. Erdle Perforating Company,* 53 A.D.2d 1008, 386 N.Y.S.2d 265 (1976), where the court, on facts substantially the same as those in the present case, held that the question was one of fact for the jury to decide.

perceive no such divergence. In *Talley v. Dept. of Correction*, 230 Md. 22, 28–29, 185 A.2d 352 (1962), a case dealing with whether a Workmen's Compensation claimant had suffered a compensable injury, the Court set forth the applicable standard as follows:

> "[W]here the facts are conceded, undisputed, or uncontroverted, and the inferences to be drawn therefrom are plain, definite and undisputed ..., their legal significance is a matter of law to be determined by the court, but where the facts, or inferences therefrom, or both, are in dispute, such questions are to be determined by a jury (or where the case is submitted to the court, by the judge as questions of fact, not of law)...."

In explaining the test, the Court relied on *Moore v. Clarke*, 171 Md. 39, 187 A. 887 (1936); *Barnes v. Myers*, 163 Md. 206, 161 A. 279 (1932); *Beyer v. Decker*, 159 Md. 289, 150 A. 804 (1930); *Harrison v. Central Construction Co.*, 135 Md. 170, 108 A. 874 (1919); and *L. & S. Co. v. State Accident Fund*, 221 Md. 51, 155 A.2d 653 (1959). Although the majority opinion here cites these same cases as espousing "two tests," the Court in *Talley* saw no disharmony whatsoever in them. In light of the case law, discussion of "two tests" is confusing.

### (2)

As the majority notes, the criteria usually examined to determine whether an employer-employee relationship exists, listed in *Mackall v. Zayre Corp.*, 293 Md. 221, 230, 443 A.2d 98 (1982),

> "include (1) the power to select and hire the employee, (2) the payment of wages, (3) the power to discharge, (4) the power to control the employee's conduct, and (5) whether the work is part of the regular business of the employer. The decisive test in determining whether the relation of employer and employee exists is whether the employer has the right to control and direct the employee in the performance of the work and in the manner in which the work is to be done."

The majority, relying on language in *Mackall, L. & S. Co., supra,* 221 Md. at 57, 155 A.2d 653, and *Keitz v. National Paving Co.,* 214 Md. 479, 134 A.2d 296, 136 A.2d 229 (1957), asserts that the fourth criterion, "the factor of control," is "for our purposes, 'decisive,' ... 'controlling,' ... 'conclusive,' 'determinative,' and 'definitive.'" The Court takes the position that, once the factor of control is established, the one exercising control is an employer as a matter of law. Largely equating the power to control the employee's conduct with the power to control the performance of specific tasks, the majority concludes "that the control exercised by Safway over Whitehead clearly establishes an employer/employee relationship." Maryland case law provides no support for this reasoning or conclusion.

First, the Court has in the past been unclear whether the factors such as the right to hire and discharge indicate a right to control or whether the right to control is a criterion separate and distinct from the other factors. *Compare L. & S. Co.,* 221 Md. at 57, 155 A.2d 653, *with Thompson v. Paul C. Thompson & Sons,* 258 Md. 391, 395, 265 A.2d 915 (1970). The cases are consistent, however, in that, regardless of the way the Court has viewed the control criterion, all of the factors are given weight in determining the employer-employee relationship. *See, e.g., Mackall, supra,* 293 Md. at 231, 443 A.2d 98; *Thompson, supra,* 258 Md. at 396, 265 A.2d 915; *Marine v. Service Trucking Co.,* 225 Md. 315, 321, 170 A.2d 188 (1961); *L. & S. Co., supra; Snider v. Gaultney,* 218 Md. 332, 337–338, 146 A.2d 869 (1958); *W.J. Dickey v. State Tax Comm.,* 212 Md. 607, 611–612, 131 A.2d 277 (1957); *Charles Freeland v. Couplin,* 211 Md. 160, 170–172, 126 A.2d 606 (1956); *Sun Cab Co. v. Powell,* 196 Md. 572, 578–582, 77 A.2d 783 (1951).

Second, the cases cited by the majority make clear that the control factor is decisive only in the sense that evidence of control will support a determination *by the trier of facts* that an employer-employee relationship existed. In *Mackall, supra,* 293 Md. 221, 443 A.2d 98, the Court decided that the plaintiff could simultaneously be the employee of

two employers. The employee in that case worked for a company, Alden, which rented a concession stand for the sale of wigs in a Zayre department store. Immediately after listing the five criteria and commenting that the decisive test is whether the employer has the right to control and direct the employee, the Court applied all of the criteria:

"Here there was evidence to show that both Alden and Zayre participated in the selection and hiring of Mackall. Both participated in the payment of her wages. Both had the power to discharge her. The retail sale of wigs and millinery was a part of the regular business of both. Most important, there was evidence to show that both exercised control over Mackall in the performance of her duties." *Id.* at 231, 443 A.2d 98.

The Court concluded:

"The evidence was more than sufficient to support an inference that both Alden and Zayre simultaneously were Mackall's employers. Thus, *the question whether the employer-employee relationship existed was a question of fact to be determined by the jury. Id.* (Emphasis added.)

In *L. & S. Co.*, *supra*, 221 Md. 51, 155 A.2d 653, the Court was presented with the question whether, at the time he was fatally injured, a tractor operator was the employee of L. & S. Construction Company, of Weygandt Engineering and Construction Company, or of both. L. & S. had furnished the tractor and operator to Weygandt, and the operator was killed while performing work for Weygandt. The case was tried before the court, and evidence was introduced to show that Weygandt directed the employee in the performance of his work. Despite this evidence, the trial judge found as a fact that L. & S. was the sole employer of the deceased when the accident happened. On appeal, this Court held that the evidence of control by L. & S., coupled with its hiring, payment of wages and right to dismiss the employee, was sufficient to support the trial court's *factual* determination.

In *Keitz, supra,* 214 Md. 479, 134 A.2d 296, 136 A.2d 229, the issue was whether the driver of a dump truck owned by the driver's general employer, Sudbrook, was also the employee of National Paving Company, the company to which the truck and the employee's services had been furnished. While hauling for National, the employee was involved in a traffic accident, injuring another driver. The Court, in holding that the trial court had erred in directing a verdict that National was not the truck driver's employer, pointed to the following evidence in the case:

"After Redmond Sudbrook ascertained the number of trucks National wanted for the next day's work, he told the drivers in the evening what they were supposed to do the following morning, and if they were told to go to National or to haul asphalt for, or bring stone or dust from the quarry to, National, anyone in authority at National could tell them what to do. In fact, it was 'agreed on', a 'regular part of the procedure', and 'by agreement' that Sudbrook's drivers were to take and obey whatever orders or instructions were given them by National's superintendents or other supervisory personnel."

The Court listed the five criteria which may be considered in determining the existence of the employer-employee relationship and discussed the "decisive" test of the right to control the servant. The Court noted that, based on the testimony,

"the jury might have concluded, that National and its superintendents had an almost unlimited right to control and direct Ogle in the performance of National's work, once he had reported to National. While his principal duties involved hauling from three different sources, there is nothing in the testimony that states that it was not at liberty to require of him trips elsewhere. Sudbrook's trucks ran side by side with National's in the performance of National's business. Ogle stated that 'whatever National's superintendent told (him) to do, (he) would do'. This clearly seems to have permitted National a wide latitude in controlling and directing his work, such

as is anticipated in the relationship of master and servant." *Id.* at 492, 134 A.2d 296, 136 A.2d 229.

The Court concluded that this evidence of control and direction "was legally sufficient ... *to require the submission to the jury* of the question whether [the employee] was the servant of National when the accident occurred." 214 Md. at 493, 134 A.2d 296, 136 A.2d 229 (emphasis added).

A case not discussed by the majority, *Charles Freeland v. Couplin, supra,* 211 Md. 160, 126 A.2d 606, decided whether a person killed in a logging accident was an employee or an independent contractor. The deceased, Ernest M. Couplin, had been hired to cut timber on Freeland's land. The trial court had submitted the issue to the jury after denying Freeland's prayer for a directed verdict. In addition to the five factors previously mentioned, the Court listed a sixth which may be considered in determining the existence of an employment relationship, namely "whether or not the parties believe they are creating the relationship of master (employer) and servant (employee)." 211 Md. at 170, 126 A.2d 606. On the question of control, the Court commented that the facts seemed

"to indicate control that could not be exercised over an independent contractor who was being paid only by the ton for cut timber. Freeland, as owner, was interested in getting as much as possible out of the standing timber, and therefore controlled the cutting to that end. *Legally, as owner of timber he had the absolute right to exercise complete control over the cutting.* And he exercised such right with reference to what was to be cut, approximately when it was to be cut (though Couplin chose his own working hours) and that the cutting was done according to specifications and without wastage." *Id.* at 171, 126 A.2d 606 (emphasis added).

The Court, finding evidence of five of the six factors it listed, held that the trial court had properly denied the directed verdict prayer. The Court did not, despite the

overwhelming evidence of control, hold that Freeland was, as a matter of law, Couplin's employer.

The majority also cites *L. & S. Co., supra,* 221 Md. at 56, 155 A.2d 653, for the proposition that "the power to hire or discharge a worker can be vested in one person and the power of control in another, and that in such a case the person having the power of control is the master." This proposition was stated originally in *Sun Cab Co. v. Powell, supra,* 196 Md. at 578, 77 A.2d 783. In context, it lends no support to the majority's position. In *Sun Cab Co.,* the Court recognized the possibility that a contract might give one person the power to hire and discharge and vest complete control in another. In such a situation, where there is no question that the employee is somebody's employee, the one who exercises no control cannot, as a matter of law, be an employer or master. For other examples of this principle, *see Auto. Trade Ass'n v. Harold Folk Enter.,* 301 Md. 642, 660–661, 484 A.2d 612 (1984); *B.P. Oil Corp. v. Mabe,* 279 Md. 632, 637–643, 370 A.2d 554 (1977); *Stem v. Nello L. Teer,* 213 Md. 132, 139, 130 A.2d 769 (1957); *Globe Indemnity Co. v. Victill Corp.,* 208 Md. 573, 585, 119 A.2d 423 (1956); *Washington News Co. v. Satti,* 169 Md. 489, 492, 182 A. 286 (1936); *Bell v. State,* 153 Md. 333, 342, 138 A. 227 (1927). *Deford v. State, Use of Keyser,* 30 Md. 179, 203–204 (1869). Until today, no Maryland case has held that, just because someone exercises control, he must, as a matter of law, be an employer. These cases point out the illogic of the majority's opinion. The majority states that Safway possessed "all" or "absolute" control of Whitehead in the performance of his job. If so, Bay could have exercised no control in this respect. Therefore, Bay could not as a matter of law be Whitehead's employer. Yet, the majority states that Bay was also Whitehead's employer.

Finally, this Court could be no clearer in stating a proposition than when it held, in *L. & S. Co., supra,* that "[t]he fact that control over details as to what work is to be done and the way in which it is to be done may be exercised by the person to whom the employee is sent,

will not of itself cause the employee to become the servant of the person to whom he is sent." [2]

Assuming arguendo that Safway's control over details was greater than the control in *L. & S. Co.*, this aspect is, of itself, not enough to establish an employment relationship as a matter of law in the instant case.

Turning to the specific facts of the present case, Bay Services selected Whitehead and sent him to Safway. Bay paid Whitehead's wages. Whitehead was paid much less than Safway's employees. Bay had the right to fire Whitehead, Safway having the right only to dismiss him from the job at Safway. Safway controlled Whitehead's conduct only as to assigning specific tasks. Whitehead received no fringe benefits whereas Safway employees did. All of Safway's employees were union members; Whitehead was not. Bay, as a matter of policy, called each day to every company to which it sent workers to determine if the workers were performing satisfactorily. The jury could easily have inferred from this that, if a worker were doing an unsatisfactory job, Bay would correct the situation. Additionally, a company to which Bay sent a worker had no authority, without first getting permission from Bay, to ask that worker to return the following day. Moreover, the plaintiff produced some evidence that Bay considered itself the plaintiff's exclusive employer and that Safway did not consider itself his employer. As the majority notes, "[t]he parties' subjective beliefs" in this area are "not dispositive." Nevertheless, it has been recognized that such subjective beliefs are evidence of a party's right to control another. 1 Restatement (Second), *Agency*, § 220 comment *m* (1958). *See Anderson Nurs. Homes v. Walker*, 232 Md. 442, 444, 194 A.2d 85 (1963) (belief of the parties is a criterion to be used in determining employer-employee relationship);

---

**2.** The Court in *L. & S. Co.* did not, as the majority suggests, confine this rule to cases involving the lending of machinery along with an employee to operate it.

*Charles Freeland v. Couplin, supra,* 221 Md. at 170, 126 A.2d 606 (belief of parties is to be considered).

It is true that the basic facts relating to Whitehead's relationship to Bay and Safway were undisputed. Moreover, this may not be a case where any individual fact leads to conflicting inferences. Nevertheless, it is a case where some undisputed facts lead to one inference and other undisputed facts lead to a different inference. For example, Bay's hiring of Whitehead and payment of his wages lead to the inference that Bay and not Safway was Whitehead's employer. Similarly, the difference in salaries between Whitehead and Safway employees, Whitehead's lack of employment benefits as compared to Safway employees, his non-union status, the understanding of the parties, etc., all lead to the inference that Safway *was not* Whitehead's employer. On the other hand, Safway's direction of Whitehead on the job and the fact that the work Whitehead did was part of the regular business of Safway support an inference that Safway *was* Whitehead's employer. In several recent cases, in various contexts, this Court has emphasized that such conflicting inferences are for the trier of facts to resolve. *See, e.g., Board of Educ., Mont. Co. v. Paynter,* 303 Md. 22, 491 A.2d 1186 (1985); *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 490 A.2d 1296 (1985); *Balto. Lutheran High Sch. v. Emp. Sec. Adm.,* 302 Md. 649, 490 A.2d 701 (1985); *Comptroller v. Haskin,* 298 Md. 681, 472 A.2d 70 (1984).

The evidence Whitehead produced was sufficient to support a jury conclusion that Safway's control over him was minimal and that Bay was his exclusive employer. I would hold that the trial court erred in granting the motion for judgment n.o.v.[3]

---

**3.** Moreover, if the majority is correct that this case presents an issue of law, the legal conclusion would appear to be contrary to that

Judge RODOWSKY has authorized me to state that he concurs with the views expressed herein.

---

reached by the majority. While not dealt with in the trial court or on appeal, the facts of this case present the issue of whether Whitehead was a casual employee of Safway, thus making worker's compensation provisions inapplicable under Maryland Code (1957, 1979 Repl. Vol.), Art. 101, § 67. In *Wood v. Abell*, 268 Md. 214, 300 A.2d 665 (1973), this Court held that an employee hired for various odd jobs not to exceed one or two weeks with no promise of future or continuous employment was as a matter of law a casual employee and thus his survivors were not barred from maintaining a third party action against his casual employer. *See also* 1C Larson, *supra*, note 1, § 51.12.